## GRACE M. JORDAN v. WILLIAM A. JORDAN.[1]

February 8, 1935.

No. 30,070.

See 192 Minn. 617, 256 N. W. 169.

*Shaw, Safford & Putnam* and *Matthew J. Levitt,* for appellant.
*Daniel F. Foley,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action by Grace M. Jordan as administratrix of the estate of Marcus O. Jordan, deceased, to recover the balance of an alleged trust fund. January 29, 1913, three brothers, Marcus O. Jordan,

[1]Reported in 259 N. W. 386.

William A. Jordan, and Walter B. Jordan, Jr., entered into two contemporaneous written agreements. By one agreement Marcus assigned to his other two brothers all his interest as one of the beneficiaries under a policy of insurance on his father's life. In the other agreement the two brothers agreed to receive and retain Marcus's share of the insurance proceeds upon their father's death and to pay Marcus $50 a month during his life or until the fund was exhausted. June 30, 1924, the father died. In accordance with the agreements, the proceeds of his insurance amounting to $17,100 were paid to William and Walter. These two were engaged in the wholesale grocery business in Minneapolis, Minnesota, and made the following entry in the books of that company:

"Insurance Trust Fund
"M. O. Jordan
"Account guaranteed by W. A. and W. B. Jordan, Jr.
"Payable $50.00 per month."

Thereafter William and Walter paid Marcus the agreed $50 monthly until July 31, 1931, at which time Marcus died. Nothing more has been paid. The fund has not been exhausted. No provision was made in either of the two written agreements as to what disposition should be made of any funds left in the hands of William and Walter in the event of Marcus's death before the fund was exhausted. Grace M. Jordan, Marcus's widow and administratrix of his estate, now brings this action to recover this unexpended balance on the theory that these two contemporaneous instruments, taken together, created a trust agreement; that since Marcus, the sole beneficiary, is now dead, the trust has failed and that the remainder of the *corpus* should revert to her as heir and legal representative of the estate of Marcus, who was also the settlor. For a complete understanding of the issue involved it will be necessary to set out the two instruments in full:

"ASSIGNMENT.

"For one dollar, to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged), I hereby assign, transfer and set over all my right, title and interest in and

to Policy No. 152,612 issued by the Equitable Life Assurance Society of the United States, to William A. Jordan and Walter B. Jordan, Junior, whose post office addresses are Minneapolis, Minnesota, % W. B. & W. G. Jordan, and for the consideration above expressed I do also for myself, my executors, and administrators, guarantee the validity and sufficiency of the foregoing assignment to the above named assignees, their executors, administrators and assigns, and their title to the said policy will forever warrant and defend.

"In Witness Whereof, I have hereunto set my hand and seal this the 29th day of January, A. D. 1913.

"Marcus O. Jordan,     (Seal)."

The other instrument, executed contemporaneously with the first, is as follows:

"This Agreement, made and entered into this 29th day of January, A. D. 1913, by and between Marcus O. Jordan, of Miles City, Custer County, Montana, the party of the first part, and William A. Jordan and Walter B. Jordan, Junior, both of Minneapolis, Minnesota, parties of the second part—Witnesseth:

"That Whereas, the said party of the first part did upon the 29th day of January, A. D. 1913, assign to the said parties of the second part all his right, title and interest in. and to Policy No. 232500 of the Mutual Life Insurance Company of New York, issued upon the life of Walter B. Jordan, and in and to Policy No. 152612 of the Equitable Life Assurance Society of the United States, issued upon the life of Walter B. Jordan, and

"Whereas, it is the desire of the said parties of the second part to receive the share and interest of the said party of the first part in and to said policies when the same shall become payable and to pay the same over to the said party of the first part in monthly installments;

"Now, Therefore, in consideration of the making of the said agreements hereinabove referred to, it is mutually understood and agreed as follows, to-wit:

"That when payment shall be made under said policies the said parties of the second part as assignees of the said party of the

first part, the said parties of the second part shall receive all sums of money due the said party of the first part thereunder, and shall retain the same and invest the same as they shall see fit; that the said parties of the second part shall monthly after the receipt of said funds and during the life of this agreement pay to the said party of the first part the sum of fifty dollars per month until such fund shall be entirely exhausted; that the said parties of the second part shall annually pay interest at the rate of five per cent per annum on the balance of said fund remaining in their hands and shall add said interest to the principal of said fund; that this agreement shall remain in force during the life of this said party of the first part or until the said fund shall become entirely exhausted.

"In Testimony Whereof, the parties to this agreement have hereunto set their hands and seals this the day and year in this instrument first above written.

"Marcus O. Jordan      (Seal)<br>
"William A. Jordan      (Seal)<br>
"Walter B. Jordan, Junior    (Seal)"

The case was tried to the court, who found that by these instruments a trust was created. He ordered judgment for plaintiff. From a denial of his motion for a new trial defendant appeals. The only question presented is whether a trust was created or whether the first instrument was an absolute assignment and the second instrument merely a contract of annuity giving rise to a personal obligation on the part of Walter and William to pay Marcus $50 a month as long as he lived.

Whether a certain instrument or group of two or more instruments creates a trust depends upon the intention of the maker or makers thereof. It is axiomatic that no specific words are necessary to create a trust. Bogert, Trusts, § 19, p. 46; Restatement, Trusts (Tent. Draft No. 1) § 36. Thus it is not necessary to use the words "trust" or "trustee." Hughes v. Fitzgerald, 78 Conn. 4, 6, 60 A. 694; Morse v. Morse, 85 N. Y. 53.

Whether there is a trust or not is a question of interpretation according to the rules applicable to other written instruments.

Estate of Boyd v. Thomas, 162 Minn. 63, 68, 202 N. W. 60. Thus extrinsic facts and surrounding circumstances are proper considerations in determining intent. It is a question of fact as to whether the circumstances surrounding the execution of an instrument or instruments show an intent on the part of the maker thereof to create a trust. In the case at bar, the lower court found that there was an intention to create a trust. This finding cannot be disturbed unless there is no evidence to support it and unless the court can say as a matter of law that a trust was not created. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 411.

In this case it is clear to us that the court's finding is sustained by the evidence. The record contains a letter written when the father was still alive. This was written by the father's attorney. It is plain from this letter that the father intended that Marcus should have his full share of the proceeds but that he desired his other two sons to hold it for Marcus and "to pay over Marcus's share to him in monthly installments." Thus it is indicated that the father, though he is not the settlor, intended and desired that a trust be created by his son Marcus for the son's own benefit. Other facts indicate that the sons William and Walter thought this to be a trust fund. They so denominate it. The entry in their books was "Insurance Trust Fund." Some of the $50 monthly checks were marked by William and Walter "Trust Fund," "Trust Account," and "Insurance Account." Nothing in the contract gave William or Walter the right to the unexpended balance on Marcus's death. The use of the words "retain" and they shall "invest the same as they shall see fit" in the second instrument is further repugnant to the idea of a complete and general ownership of this money by William and Walter, in that it is a direction as to what they should do with the money, which direction would not have been given if a trust were not contemplated. It is obvious that the sons treated the matter as a trust. We must conclude that the finding of the lower court is supported by the evidence.

While it is true the evidence does not show that William and Walter upon receiving the proceeds of the insurance opened up a separate bank account or in any way segregated the fund, yet it

appears that they made a separate entry on the books of the company which they owned equally and titled it "Insurance Trust Fund." The money was put into the general fund which ran their business. We think what was done shows an intention to consider the money as trust money even though it was not segregated except by this entry on the books. Segregation of the money received is not necessary to the creation of a trust.

Since we affirm the finding that these instruments created a trust, plaintiff is entitled under 2 Mason Minn. St. 1927, § 8097, to the unexpended balance. This statute provides:

"When an express trust is created, every estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to the person creating the trust, or his heirs, as a legal estate."

Here Marcus was both the settlor and the beneficiary of the trust. When he died it failed for want of a beneficiary. Plaintiff, succeeding to Marcus's rights as settlor, is entitled to recover the amount of the unexpended *corpus*.

Affirmed.