Frederick O. **BOND**, Appellant,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. A04–564.

Supreme Court of Minnesota.

Feb. 10, 2005.

Frederick O. Bond, Champlin, MN, for Appellant.

Mike Hatch, Attorney General, Craig R. Anderson, Assistant Attorney General, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Appellant Frederick O. Bond attempted to avoid all income tax liability for the year 2000 under a claim that "FREDERICK OGAN BOND is a constructive trust created by the United States under the governing statutes whose progeny rests in the Social Security Act of 1935." Based on this assertion, Bond filed a federal estates and trusts tax return and deducted all reported income for fiduciary fees, leaving a federal taxable income of $0.00. On his Minnesota income tax return, Bond reported $0.00 taxable income based on his federal return and claimed a refund of $2,304.53, the full amount of his state income tax payroll withholdings. The Minnesota Department of Revenue initially granted Bond a refund, but corrected its assessment when it audited his return. The Commissioner of Revenue issued an order correcting Bond's taxable income and assessing Bond $3,690.48 in total tax payments for the year 2000—$2,816.53 for additional taxes, $373.95 for interest, and

$500 as a penalty for filing a frivolous return. Bond appeals from a Minnesota Tax Court order granting the Commissioner's motion for summary judgment and affirming the Commissioner's December 24, 2002 tax order. We affirm.

Frederick O. Bond earned $49,499 in the 2000 tax year—$48,638 in wages, $183 in taxable interest, and $678 in ordinary dividends. From his wages that year, his employer, Honeywell, Inc., withheld state income tax in the amount of $2,304.53. Payroll statements and the W–2 for 2000 from Honeywell were in the name of Frederick O. Bond.

Before filing his returns for tax year 2000, Bond attempted to secure from the Social Security Administration (SSA) an actual irrevocable written "Simple Social Security Trust" named "FREDERICK O. BOND."[1] Bond claims that the Trust already existed, having been established in March 1963, but he wanted the Trust's terms to be in writing. Using a form available on the Internet, Bond sent to the SSA a two-page document setting out the Trust's specific terms. He named the SSA as the Creator of the Trust, the SSA General Trust Fund as the Beneficiary, and himself as the Trustee. The Trust Document also allowed income from the Trust to pay "A Reasonable Wage" to the Trustee, including all of the Trustee's living expenses.

Bond signed the Trust Document, but the Trust Document did not provide a signature line for the SSA and no signature was obtained from the SSA. Nevertheless, Bond asserted that the SSA has manifested its approval of the Trust by issuing him a Social Security number and card and by holding open an account under his Social Security number. On July 22, 2003, Bond sent a follow-up letter to the SSA Commissioner, in which he stated that the SSA had already had sufficient time to respond to his January 10, 2001 letter, in which he enclosed the Trust Document. He then stated that the SSA needed to respond within 30 days or otherwise it would be collaterally estopped from denying the existence of the Trust. On August 25, 2003, Bond sent another letter to the SSA Commissioner stating that he interpreted the SSA's lack of response to his letters as its agreement to the Trust and that "this matter now stands secured by the maxim doctrine of Collateral Estoppel."

For his year 2000 federal income tax returns, Bond filed Form 1041 for estates and trusts rather than Form 1040 for individuals. He reported a total income of $49,499 in wages, taxable interest, and ordinary dividends, but he claimed a full deduction for "Fiduciary Fees," leaving his federal taxable income at $0.00. He then claimed a full refund for his federal income tax payroll withholdings. For his 2000 Minnesota tax return, filed on March 25, 2001, Bond filed an M–1 Individual Income Tax form rather than an M–2 return for trusts, but he modified all name and identification references to reflect that he was attempting to file a trust return. He reported $0.00 taxable income based on his 1041 filing and claimed a refund of $2,304.53, the full amount of his payroll withholdings for state income taxes. The Department of Revenue initially sent Bond a refund for this amount.

---

1. In this opinion, we will refer to the trust that Bond claims exists as "Trust" and the written document that Bond attempted to establish with the SSA as the "Trust Document."

After auditing Bond's tax return, the Commissioner of Revenue notified Bond that his filing was incorrect and that, if he did not file an amended return within 20 days of the notice, he could be subject to a penalty for having filed a frivolous tax return. Bond did not file an amended return. Having determined that Bond's taxable income for 2000 was $43,024, the Department of Revenue sent Bond an Individual Income Tax Audit Report/Tax Order, dated December 13, 2002, assessing him $3,749.86 in total taxes for 2000, of which $2,816.53 was for additional taxes, $433.33 was for interest, and $500 was for penalties. On December 24, 2002, the amount of interest was corrected to $373.95, reducing the total amount due to $3,690.48. Bond appealed the Commissioner's order to the regular division of the tax court. The Commissioner responded and, on September 18, 2003, moved for summary judgment.

On October 24, 2003, before the hearing on the summary judgment motion, Bond deposed an Illinois Certified Public Accountant (CPA) as a purported expert witness in an effort to support his theory for tax reporting. The CPA testified that the two notices that Bond received from the IRS granting refunds to the Frederick O. Bond Trust for tax years 2001 and 2002 were administrative proof that the IRS agrees that the Trust exists. More particularly, on December 9, 2002, the IRS sent Bond, as Trustee, a notice informing him that it had changed his return and that a refund would be sent to him in the total amount of taxes paid, or $8,463, unless the Trust owed other taxes. Bond received the same notice on September 15, 2003, for the 2002 tax year, granting him a refund of $2,012. The CPA contended that if the IRS accepts a taxpayer's filing, it deems it as valid.

The tax court heard the Commissioner's motion for summary judgment on November 14, 2003. On February 10, 2004, the court issued an order finding that the parties did not dispute the facts and that Bond's legal contentions were without merit because "when a person who is the source of the trust income has control over the trust corpus, he cannot avoid income tax liability by the operation of a trust." The court noted that "[s]ubstance prevails over form"—Bond's wages were paid to him and not to the SSA. The court granted the Commissioner's motion for summary judgment and affirmed the Commissioner's Order assessing Bond $2,816.53 in taxes, plus interest, for the tax year 2000, and $500 as penalty for filing a frivolous tax return.

Claiming that the tax court made clerical errors and mistakes in its fact-finding, Bond moved for relief from the court's judgment. Among several claims, he said that the record did not support the court's finding that he "[did] not deny that he earned income from wages" or that the wages were not paid to a Social Security Trust Fund. The court denied Bond's motion for relief. At that time, Bond had already filed a petition for a writ of certiorari to our court.

## I.

■■■ We review tax court decisions to determine whether the court lacked jurisdiction, whether the court's decision is supported by the evidence and is in conformity with the law, and whether the court committed any other error of law. *Jefferson v. Comm'r of Revenue*, 631 N.W.2d 391, 394–95 (Minn.2001). We are not bound by decisions of the tax court. *A & H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 546 (Minn.2000). But, before

we will overrule the tax court, we must conclude that the court's decision is clearly erroneous because the evidence as a whole does not reasonably support the decision. *Lewis v. County of Hennepin,* 623 N.W.2d 258, 261 (Minn.2001).

■ Minnesota Rules of Civil Procedure 56 provides that a court shall grant summary judgment if the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. The Minnesota Rules of Civil Procedure apply to tax court proceedings where they are not inconsistent with tax court procedures. *See* Minn. R. Civ. P. 81.01. When reviewing an order for summary judgment, we determine (1) whether there are any genuine issues of material fact and (2) whether the lower court erred in its application of the law. *In re Daniel,* 656 N.W.2d 543, 545 (Minn. 2003). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976) (stating "[a] material fact is one of such a nature as will affect the result or outcome of the case depending on its resolution."). On issues of material fact, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320, 324 (Minn. 2004). We review de novo the tax court's conclusions of law, interpretation of statutes, and application of the law. *Chapman v. Comm'r of Revenue,* 651 N.W.2d 825, 830 (Minn.2002).

■ We must first address Bond's contention that genuine issues of material fact are in dispute. Specifically, Bond argues that the tax court erred when it granted the Commissioner's motion for summary judgment because the following "material facts" were at issue: (1) "overwhelming evidence via several motions supported by law"; (2) a sworn expert deposition about the validity of Bond's return; and (3) "documentary evidence establishing validity and existence of the parties with standing." Bond argues that this evidence could lead a reasonable person to conclude that "the account creation of the Social Security Administration effects the creation of a constructive [T]rust that is in fact a 'person' under state and federal taxing statutes" and separate from the person producing the income. He argues that the court did not review all of the evidence that he submitted.

Bond claims that the tax court "rewrote the record of evidence on file" in order to reach its result. Specifically, he criticizes the part of the court's order that says "noticeably absent from the record are any documents setting up the Trust or evidence that it has a taxpayer identification number." Bond claims this statement is incorrect because of his contentions that the SSA established the Trust and issued the Trust's tax identification number in the form of Bond's Social Security number. He says that he submitted all of the foregoing as evidence but does not explain how his theory allows him to avoid all tax liability.

The tax court found that no material facts were in dispute and granted the Commissioner's motion. We agree. In its memorandum, the court stated what it found to be the relevant facts under the tax law for its decision. The court found that: (1) in 2000, Bond resided in Minnesota and earned $49,499 in wages, taxable

interest, and dividends; (2) Bond's W–2 indicated that his wages were paid to him individually and that his employer had withheld $2,304.53 in state taxes; (3) Bond filed a modified Minnesota Individual Income Tax Return on which he claimed a full refund for withheld state taxes based on his assertion that all income was deducted for fiduciary fees; and (4) Bond based his Minnesota tax return on his federal 1041 form on which he also deducted all income as fiduciary fees. Having reviewed the record, we conclude that Bond's W–2 statements and tax filings for tax year 2000 confirm these findings. Bond does not contest any of the data found on these forms, only the conclusions to be reached from them.[2] We conclude that the tax court did not abuse its discretion in reviewing the record and determining that no genuine issues of material fact were disputed.

## II.

■ Next, we must determine whether the tax court erred in its application of the law. Bond asserts that FREDERICK O. BOND is a constructive Trust created by the SSA[3] and that the Trust allows him to deduct all of his income for fiduciary fees.

■ Under Minnesota common law, the essentials of an express trust are (1) a designated trustee with enforceable duties; (2) a designated beneficiary vested with enforceable rights; and (3) a definite trust res in which the trustee has legal title and the beneficiary has the beneficial interest. *In re Bren,* 284 B.R. 681, 697 (Bankr. D.Minn.2002). A trust is created only if the settlor demonstrates, by external expression, the intent to create a trust. *In re Bush's Trust,* 249 Minn. 36, 42–43, 81 N.W.2d 615, 619–20 (1957). The settlor does not need to use any particular form or words to create a trust. *Id.* at 42, 81 N.W.2d at 619. But the settlor must show "a definite, unequivocal, explicit declaration of trust," or circumstances must "show with reasonable certainty or beyond a reasonable doubt that a trust was intended to be created." 90 C.J.S. § 41 (2002).

■ The SSA has not manifested any intent to create a trust with individual taxpayers. The purpose of Social Security was not to create trusts with individual taxpayers, but was to provide social insurance for the "security of the men, women, and children of the Nation against certain hazards and vicissitudes of life." *Economic Security Act Hearings Before the Committee on Ways and Means House of Representatives,* 74th Cong. 13 (1935) (Message from the President of the United States Transmitting A Recommendation for Legislation on the Subject of Economic Security). Bond claims that the following acts provide evidence of the

---

2. The tax court did not mention the CPA's deposition in its memorandum. The CPA's testimony, however, spoke only to his belief in the existence of the FREDERICK O. BOND Trust and not to any of the court's findings listed above. Thus, despite Bond's claim that the CPA's testimony provides evidence of factual disputes, the CPA's opinion testimony only has any possible relevance for legal conclusions.

3. Bond misconstrues the meaning of a constructive trust. A constructive trust "has no existence in fact as a trust but is only a fiction adopted by equity as an unjust-enrichment, rectifying remedy." *Knox v. Knox,* 222 Minn. 477, 488, 25 N.W.2d 225, 232 (1946). Constructive trusts are "designed to correct abuses of fiduciary relationships and force a conveyance to prevent unjust enrichment." *PJ Acquisition Corp. v. Skoglund,* 453 N.W.2d 1, 20 (Minn.1990).

SSA's intent to establish the FREDER-ICK O. BOND Trust: (1) the issuance of Bond's Social Security number; (2) the distribution of Bond's Social Security card; and (3) the holding open of an account under his issued Social Security number. We conclude that these three acts do not create a genuine issue as to whether the SSA intended to create a trust and that these three acts are more comparable to acts taken to create information-tracking systems.

Bond's only other argument is that the SSA is collaterally estopped from denying the existence of the Trust because it failed to respond to his attempts to establish the Trust Document. We have repeatedly held that a party seeking to apply equitable estoppel against a government agency acting in its sovereign capacity has a heavy burden of proof. *Northwest Airlines, Inc. v. County of Hennepin*, 632 N.W.2d 216, 221 (Minn.2001). This proof includes a showing that the government's wrongful conduct induced the party's detrimental reliance. *Id.* Affirmative misconduct is not simple inadvertence, mistake, or imperfect conduct. The SSA has only declined to respond to Bond's letters and notices attempting to set up the Trust Document. Therefore, we conclude that the SSA's inaction is insufficient to establish that it affirmatively represented that it supports the existence of the FREDERICK O. BOND Trust.

We also conclude that Bond may not rely on notices from the IRS granting refunds to the Frederick O. Bond Trust for tax years 2001 and 2002 as a basis to establish that the Trust exists. For income tax purposes, Minnesota defines "net income" as federal taxable income. Minn. Stat. § 290.01, subd. 19 (2000). Minnesota tax assessments, however, are independent from federal tax assessments and may differ from federal assessments. In *Specktor v. Comm'r of Revenue*, we concluded that although Minnesota gross income is defined as federal adjusted income, the Commissioner may adjust a taxpayer's gross income based on the Commissioner's own independent investigation of the taxpayer. 308 N.W.2d 806, 807–08 (Minn.1981). We have, therefore,

> rejected the argument that federal adjusted gross income was conclusive, observing that such an approach would nullify several state statutes which give the Commissioner of Revenue authority to examine tax returns and make assessments if deficiencies are found. Moreover, if federal gross income was controlling, state tax authorities would be powerless to correct the taxpayer's return if the federal adjusted gross income were the result of a mistake or fraud.

*Weed v. Comm'r of Revenue*, 550 N.W.2d 285, 289 (Minn.1996) (internal citations omitted).

■ Bond earned $49,499 in wages, taxable interest, and ordinary dividends in the year 2000. Having earned the income, he cannot avoid taxation by contrivances. The tax court is free to look to the substance, not just the form, of a transaction. *Midwest Federal Sav. and Loan Ass'n v. Comm'r of Revenue*, 259 N.W.2d 596, 599 (Minn.1977). The granting of a refund by the IRS, whether valid or erroneous, does not prevent the Commissioner from independently evaluating Bond's state taxes.

Thus, for all of the foregoing reasons, we conclude that the Bond Trust does not exist. Accordingly, we hold that the tax court did not err when it affirmed the Commissioner's Order by concluding that Bond, as an individual, earned income in

the form of wages, taxable interest, and ordinary dividends.

## III.

Having held that Bond cannot avoid tax liability for wages, taxable interest, and ordinary dividends through the mechanism of a purported Trust, we must now decide whether the tax court erred in affirming the Commissioner's assessment of a penalty for filing a frivolous return. Minnesota Statutes § 289A.60, subd. 7 (2000), imposed a $500 penalty for the filing of a "frivolous return."[4] It is generally well established in federal tax law that frivolousness is determined under an objective standard and that a position is "frivolous" if it has no basis in law or fact. *See, e.g., Kahn v. United States,* 753 F.2d 1208 (3d Cir.1985); *Gillett v. United States,* 233 F.Supp.2d 874, 881 (W.D.Mich.2002); *Schoffner v. United States,* 627 F.Supp. 167, 169 (S.D.Ohio 1985); *Matz v. United States,* 581 F.Supp. 714, 716 (N.D.Ill.1984).

■■■ Bond earned $49,499 in wages, taxable interest, and ordinary dividends in tax year 2000. The tax laws are clear that all net income of a resident individual is taxable. Minn.Stat. § 290.014, subd. 1 (2000). Valid trusts can claim deductions for reasonable fiduciary fees, but the fiduciary cannot escape taxation for this income earned. Bond's contention that he can escape all income tax liability by claiming that his income from wages, taxable interest, and ordinary dividends was paid out to him as the Trust's fiduciary has no basis in the tax law. Therefore, we conclude that Bond's claim is frivolous because it has no basis in fact or law. Ac-

cordingly, we hold that the tax court did not err when it affirmed the Commissioner's assessment of a penalty for Bond's filing of a frivolous tax return.

Affirmed.

ANDERSON, G. BARRY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

PAGE, Justice (concurring specially).

I concur in the result, but differ as to the rationale. This is a review on writ of certiorari to the tax court, which affirmed an order assessing tax liability, interest, and a frivolous return penalty. The relevant facts are not at issue. During the calendar year 2000, Bond received $48,638 in wages, $183 in taxable interest, and $678 in dividends. On March 25, 2001, Bond filed his state income tax return (Form M1) for tax year 2000, modifying the form to serve as a trust income tax return and claiming $0.00 in taxable income and a refund for the full amount of state income taxes withheld. Bond submitted a Form W2 Wage and Tax Statement reflecting that his employer, Honeywell, Inc., withheld $2,304.53 in state income tax. Bond based his state income tax return on his federal income tax return for estates and trusts (Form 1041) on which he reported that all of his earnings had been paid to a trust, identified himself as trustee, and claimed a deduction equal to his gross income as fiduciary fees.

According to the tax court, an audit of Bond's state income tax return was per-

---

4. We apply the tax law valid at the time of the filing. For frivolous returns, Minnesota Statutes § 289A.60, subd. 7, now provides for "a penalty of the greater of $1,000 or 25 percent of the amount of tax required to be shown on the return." Minn.Stat. § 289A.60, subd. 7 (2004).

formed and on November 21, 2002, the Minnesota Commissioner of Revenue notified Bond that he had incorrectly reported his tax liability and could be assessed a $500 penalty for filing a frivolous return unless he filed an amended return within 20 days.[1] The record reveals that an amended return was not filed. On December 13, 2002, the Department of Revenue issued an audit report assessing Bond $3,749.86 in taxes, interest, and penalties. By notice of December 24, 2002, the commissioner modified the order, adjusting the calculation of interest, and assessing total liability for taxes, interest, and penalties at $3,690.48. The tax court affirmed on appeal, rejecting Bond's claim that his income was exempt from taxation as lacking in merit. Bond asserts error in the tax court's application of law.

In apparent reliance on a theory floated on an Internet website, Bond advanced the position that the Social Security Administration (SSA) had created the FREDERICK OGAN BOND trust in March 1963, "offered" the position of trustee to him by sending him a social security card, and instructed him "to sign [the card] for acceptance"; and that by signing the card he acted as trustee in all of his dealings with the trust. Bond purported to "secure" the trust with an "indenture" by submission of form letters and documents, made available on the Internet website, to the SSA; and he thereafter filed the federal Form 1041 (trust income tax return) instead of the federal Form 1040 (individual income tax return).

The primary objective of the old age and disability aspects of the social system is to "provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age." *Mathews v. De Castro*, 429 U.S. 181, 185–86, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). Social security is an earnings-based insurance program funded by wage earnings and is set up as a trust fund administered by the Social Security Administration. *Doe v. Heckler*, 568 F.Supp. 681, 683 (D.C.Md.1983). Under the current system, employers withhold payroll taxes from their employees' wages and pay those taxes, together with the employer's share, to the federal government to fund the Social Security Trust Fund. *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 560 (D.Md.2003). Assets in the Social Security Trust Fund, however, are not segregated for particular classes of beneficiaries. "Rather, the trust funds are accounting entries in the federal budget to which Social Security contributions and certain other accruals and payments are attributed and from which Social Security benefits and certain other expenses are paid." Howell E. Jackson, *Accounting for Social Security and Its Reform*, 41 Harv. J. on Legis. 59, 69 (2004).

Bond received taxable income from wages, interest, and dividends in the year 2000. His claim that his income was exempt from state income tax was subject to summary judgment as it was without factual or legal basis. Moreover, Bond's state tax return was substantially incorrect and frivolous, thus making him liable for the frivolous return penalty. *Cf. Bradley v. United States*, 817 F.2d 1400, 1404 (9th

---

**1.** Minnesota Statutes § 289A.60, subdivision 7 (2000), assigned liability in the amount of $500 to a person filing a frivolous tax return. The provision has since been amended to provide a "penalty of the greater of $1,000 or 25 percent of the amount of tax required to be shown on the return" for returns filed after December 31, 2003. Act of May 25, 2003, ch. 127, art. 3, § 5, 2003 Minn. Laws 780.

Cir.1987) (test for frivolous federal tax return is met when the position taken by the individual has no basis in fact or law). I see no need to further refute Bond's assertions "with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." *Crain v. Comm'r of Internal Revenue,* 737 F.2d 1417, 1417–18 (5th Cir.1984).

ANDERSON, RUSSELL A. (concurring specially).

I join in the special concurrence of Justice Page.