**THOMAS B. OLSON & ASSOCIATES, P.A., Appellant,**

v.

**LEFFERT, JAY & POLGLAZE, P.A., et al., Respondents.**

**No. A07–2165.**

Court of Appeals of Minnesota.

Oct. 21, 2008.

Thomas B. Olson, Matthew H. Jones, Olson & Lucas, P.A., Edina, MN; and Richard J. Sheehan, Harvey & Sheehan, P.A., Minneapolis, MN, for appellant.

Paul C. Peterson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for respondents.

Considered and decided by ROSS, Presiding Judge; JOHNSON, Judge; and HUSPENI, Judge.*

## OPINION

JOHNSON, Judge.

This case concerns $31,000 in settlement proceeds that were held in the trust account of the law firm of Leffert, Jay & Polglaze, P.A. Upon the instructions of clients of the firm, Leffert Jay transferred some of the funds to another attorney who had performed services for the clients and then transferred the balance of the funds to its own operating account. A third law firm, Thomas B. Olson & Associates, P.A., which previously had represented Leffert Jay's clients, did not receive any of the funds, despite having filed an attorney lien against the funds.

Olson brought suit against Leffert Jay and the attorney responsible for the transfers of funds, who are respondents on appeal. The district court granted respondents' motion for summary judgment. We conclude that Olson introduced evidence

that creates genuine issues of material fact on his claims of breach of fiduciary duty and breach of contract and, thus, that the district court erred by granting summary judgment to respondents on those claims. We conclude, however, that the district court properly granted summary judgment to respondents on Olson's claim of conversion. Therefore, we affirm in part, reverse in part, and remand for further proceedings on Olson's two viable claims.

## FACTS

In 2004, Elizabeth Howell and Mary Howell, sisters and minority shareholders in the Windsaloft Company, retained Thomas B. Olson to represent them in a lawsuit against Windsaloft and an officer of the company. Olson negotiated a potential settlement with the Windsaloft defendants but was unable to finalize a settlement agreement. In approximately July 2005, after the Howells stopped paying Olson's bills, Olson withdrew from representation. On July 27, 2005, Olson's firm filed a petition for lien and judgment in the district court, alleging that the Howells owed him approximately $29,700.

In August 2005, the Howells retained Terrance C. Newby of the Leffert Jay firm to represent them in the Windsaloft matter and to oppose the lien petition brought by Olson. In October 2005, Newby finalized a settlement agreement that obligated the Windsaloft defendants to pay the Howells $115,000. The Windsaloft defendants were reluctant to pay, however, because of Olson's attorney lien, which asserted a potential claim against the Windsaloft defendants so long as Olson's fees remained unpaid. Newby explained the situation in an e-mail message to the Howells on November 29, 2005:

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

It does not matter whether [Olson] has a lien now. There is a pending lien proceeding. Even if we do exchange documents with Keyes [the Windsaloft defendants' attorney] and finalize the settlement, we **_cannot_** do anything with any assets pending the resolution of the lien proceeding. I understand that you and Brett [Weise] think otherwise.

The issue is now moot, because Keyes will not exchange documents until the Olson issue is resolved.

In early December 2005, Newby, Olson, and Michael E. Keyes, counsel for the Windsaloft defendants, engaged in e-mail communications intended to remove the obstacles to payment by the Windsaloft defendants. On December 2, 2005, Olson sent an e-mail message to Keyes, with a copy to Newby, stating the terms that he required to release his claims against the Windsaloft defendants:

I'll stipulate to a release of the other monies to [the Howells] and a release of the claims to the shares and the lawsuit settlement itself, subject to the deposit of $32,000 of the settlement funds into the Leffert [Jay &] Polglaze trust account.

On December 5, 2005, Newby responded to Olson in an e-mail message, as follows:

We will agree to place in an escrow account an amount sufficient to cover the amount of your lien petition request, and any interest that could legally be awarded. Please send a letter to Mike Keyes releasing him from all claims, and advising him that you stipulate to allow him to release the settlement funds to me.

On the same day, Olson asked Newby whether he would pay the amount awarded upon the establishment of his lien "irrespective of any contrary instructions from [the Howells]." The evidence concerning Newby's response is in conflict. Newby states in an affidavit that, on December 6, 2005, he told Olson in a telephone conversation that he "would not disregard the Howells' instructions" because he was acting on their behalf. But in his deposition, Newby testified that he did not convey such information to Olson "because I did not know that my clients intended on reneging on their agreement."

On December 6, 2005, Olson sent a follow-up e-mail message to Newby, seeking clarification regarding the amount to be deposited: "How much have you agreed to escrow? I'd like to get the letter off to Keyes that you wish." The next day, December 7, 2005, Newby sent an e-mail message to Olson confirming the amount to be deposited and informing Olson that the amount would remain in the firm's escrow account during the pendency of Olson's lien petition:

Please be advised that my clients have agreed to place $31,000 into my firm's escrow account after we receive the settlement proceeds from Mike Keyes. That amount will remain in my firm's escrow account pending the outcome of your lien petition.

Please send a letter to Mike Keyes today releasing him from all liability and claims in connection with your lien petition, and instructing him to release the settlement proceeds to my firm as soon as possible.

On December 7, 2005, Olson sent an e-mail message to Keyes, with a copy to Newby, in which he expressed his agreement in principle to a limited release:

Pursuant to my agreement with Terry Newby and his firm, I do advise that I and my firm release our claim of an attorney's lien for fees and costs....

It is my understanding that the lump sum of $115,000 will be paid into the Leffert, Jay & Polglaze trust account.

Our lien shall continue by agreement with Mr. Newby and his clients in a certain sum of said proceeds to be deposited by him into his law firm IOLTA trust account pending resolution of our claims....

At Keyes's request, Olson executed a more formal limited release on December 13, 2005, which states:

This Release of Lien is limited in that said Lien claim shall continue in those settlement cash proceeds to be paid over by Defendants to Leffert, Jay & Polglaze, P.A.'s IOLTA trust account in the sum of $115,000.00. Said continuing claim of an attorney's lien is limited to the total sum of $31,000. The actual amount of any lien will be determined by the District Court.

On December 21, 2005, the settlement amount was deposited into Leffert Jay's trust account. Soon thereafter, Leffert Jay transferred $84,000 of the funds to the Howells.

In December 2005, a dispute arose between the Howells and Leffert Jay concerning the firm's invoices for legal services, which totaled approximately $17,700. For a period of time, the Howells refused to pay Leffert Jay. On December 29, 2005, the Howells instructed Newby to transfer the settlement proceeds remaining in the trust account, $31,000, to Brett Weise, an attorney in the State of Washington, who also was performing legal services for the Howells. Newby decided that Leffert Jay should retain funds in the trust account sufficient to cover the Howells' outstanding debt to Leffert Jay. Thus, Leffert Jay transferred approximately $13,300 to Weise and retained the remaining amount of approximately $17,700. Later, in January 2006, Leffert Jay and the Howells agreed to a $5,000 reduction in the Howells' account balance. Leffert Jay then issued a check to Weise

for $5,000 and transferred the remainder of the settlement proceeds, approximately $12,700, to its own operating account. Olson never received any of the settlement proceeds and was unaware of Leffert Jay's disposition of the funds until February 2006.

On February 17, 2006, Leffert Jay withdrew from representation of the Howells. On February 21, 2006, the district court established Olson's lien, securing payment of his unpaid fees and awarding a judgment for the same amount. In April 2006, the district court vacated the judgment but left the attorney lien in effect.

In July 2006, Olson commenced this action against Leffert Jay and Newby. In May 2007, respondents moved for summary judgment on all claims, and Olson moved for partial summary judgment on his contract and conversion claims. In September 2007, the district court denied Olson's motion for partial summary judgment and granted respondents' motion for summary judgment. Olson appeals from the district court's rulings on both motions.

**ISSUES**

I. Is there a genuine issue of material fact as to whether respondents owed Olson a fiduciary duty with respect to Olson's beneficial interest in settlement proceeds in Leffert Jay's trust account?

II. Is there a genuine issue of material fact as to whether Olson and respondents entered into an enforceable contract obligating respondents to hold settlement proceeds in Leffert Jay's trust account until Olson's lien petition was resolved?

III. Is there a genuine issue of material fact as to whether, at the time Leffert Jay distributed the settlement proceeds from its trust account, Olson had an ownership interest in the funds sufficient to prove a claim of conversion?

## ANALYSIS

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03; *see also Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the party against whom summary judgment was granted. *Frieler v. Carlson Mktg. Group, Inc.*, 751 N.W.2d 558, 564 (Minn.2008). "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district court] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

## I.

Olson argues that the district court erred by concluding, as a matter of law, that respondents did not owe Olson a fiduciary duty. The district court reasoned that respondents did not owe Olson a fiduciary duty because Olson and Newby were opposing counsel, because imposition of a fiduciary duty would create a conflict with Newby's duty to his clients, and because Olson could pursue a remedy against Newby's clients, the Howells.

In Minnesota, whether a person owes a fiduciary duty to another person typically is determined by the relationship between the two persons. Generally, a "fiduciary" is one who "enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." *Carlson v. Sala Architects, Inc.*, 732 N.W.2d 324, 330–31 (Minn.App.2007) (citing *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985)), *review denied* (Minn. Aug. 21, 2007). Relationships that give rise to fiduciary duties "transcend[ ] the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith," even if the relationship is not labeled "fiduciary." *Id.* at 331. Some types of relationships automatically give rise to a fiduciary relationship. *See In re Trusts A & B of Divine*, 672 N.W.2d 912, 917–18 (Minn.App.2004) (trustees and beneficiaries); *see also Rice v. Perl*, 320 N.W.2d 407, 410 (Minn.1982) (attorneys and clients); *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 779 (Minn.App.2006) (general partners and limited partners); *Bolander v. Bolander*, 703 N.W.2d 529, 548 (Minn.App.2005) (directors or officers and corporations), *review dismissed* (Minn. Nov. 15, 2005). Other types of relationships, however, may or may not give rise to a fiduciary relationship, depending on the circumstances. *See, e.g., Murphy v. Country House, Inc.*, 307 Minn. 344, 350, 240 N.W.2d 507, 512 (1976) (co-owners of incorporated business); *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn.App.2007) (insurer and insured), *review denied* (Minn. Dec. 11, 2007). Olson has proffered several theories by which he claims respondents had a fiduciary duty toward him. The only theory that has merit is the contention that respondents owed Olson a fiduciary duty because of the existence of a trust that was created for Olson's benefit. A trustee-beneficiary relationship necessarily gives rise to a fiduciary duty in the trustee toward the beneficiary. *See In re Divine*, 672 N.W.2d at 917–18.

Under Minnesota law, the requirements of an express trust are "(1) a designated trustee with enforceable duties;

(2) a designated beneficiary vested with enforceable rights; and (3) a definite trust res in which the trustee has legal title and the beneficiary has the beneficial interest." *Bond v. Commissioner of Revenue*, 691 N.W.2d 831, 837 (Minn.2005). No specific form or language is required to create a trust, but there must be "a definite, unequivocal, explicit declaration of trust," or circumstances that "show with reasonable certainty or beyond a reasonable doubt that a trust was intended to be created." *Bond*, 691 N.W.2d at 837 (quotation omitted); *see also In re Bush's Trust*, 249 Minn. 36, 42, 81 N.W.2d 615, 619 (1957). The types of relationships that give rise to a trust may "def[y] easy classification." *Johnson by Werner v. Johnson*, 272 Minn. 284, 293, 137 N.W.2d 840, 847 (1965). "A trust is created only if the settlor demonstrates, by external expression, the intent to create a trust." *Bond*, 691 N.W.2d at 837 (citing *In re Bush's Trust*, 249 Minn. at 42–43, 81 N.W.2d at 619–20). "Whether ... extrinsic facts, as applied to an ambiguous writing, justifies an inference that the settlor intended to create a trust is a question of fact." *In re Bush's Trust*, 249 Minn. at 43, 81 N.W.2d at 620; *see also Jordan v. Jordan*, 193 Minn. 428, 432, 259 N.W. 386, 388 (1935). The manifestation of intent to create a trust will be effective even if the settlor's language is "inept, clumsy, or even unsuitable." *In re Bush's Trust*, 249 Minn. at 42, 81 N.W.2d at 619–20; *see also Bond*, 691 N.W.2d at 837.

■ In this case, Elizabeth Howell sent an e-mail message to Newby on November 30, 2005, saying, "Mary and I are fine with holding $29,000 at your firm in its trust account for the resolution of the Tom Olson matter." The record suggests that Newby and the Howells had further communications after November 30, 2005, about the amount of settlement proceeds because Newby informed Olson on December 7, 2005, that the Howells had agreed to place $31,000 in the firm's trust account. The December 7, 2005, e-mail message from Newby to Olson supplies further evidence of the Howells' intent to create a trust. The instructions communicated by Elizabeth Howell to Newby on behalf of the Howells, and Newby's communication of the Howells' intent to place the settlement proceeds in the firm's trust account because of Olson's asserted attorney lien, are sufficient to allow a rational trier of fact to find "with reasonable certainty or beyond a reasonable doubt that a trust was intended to be created." *Bond*, 691 N.W.2d at 837 (quotation omitted). This conclusion is consistent with caselaw demonstrating that a trust is an appropriate instrument to facilitate a financial transaction involving multiple parties. *See, e.g., American Sur. Co. v. Greenwald*, 223 Minn. 37, 43–45, 25 N.W.2d 681, 684–86 (1946) (considering trust created to facilitate insurer-agent relationship); *In re Trusteeship by City of Sheridan*, 593 N.W.2d 702, 704 (Minn.App.1999) (considering trust used to facilitate financing of municipal construction project).

Respondents argue that Olson conceded in his deposition that Newby did not owe him a fiduciary duty. The two excerpts from the transcript on which respondents rely do not establish such a concession. In the first excerpt, Olson testified that Newby did not owe him a fiduciary duty by virtue of an attorney-client relationship between them. That may be true but still not preclude a finding that Newby owed Olson a fiduciary duty under a trust theory. In the second excerpt, Olson states that Newby did not owe him a fiduciary duty on December 2, 2005. That testimony is not in conflict with our conclusion that a fiduciary duty may have arisen at a later date upon the creation of a trust. Olson and Newby exchanged other e-mail messages between December 5 and 7,

2005, Olson executed the limited release on December 13, 2005, and the settlement proceeds were deposited into the Leffert Jay trust account on December 21, 2005, thereby providing the *res* that satisfies the third and final requirement of a trust.

Respondents argue that they did not owe Olson a fiduciary duty because such a duty would conflict with the duty they owed to their clients, the Howells. As a general matter, Minnesota courts are "extremely reluctant to impose a duty upon attorneys to their client's adversary" because such a duty would "necessarily conflict" with the attorney's duty to the client. *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 378–79 (Minn.1989) (holding that attorney did not have duty to nonclients to investigate arbitrator's impartiality because of duty to "zealously represent [his] client and resolve all doubts in favor of the client"); *Marker v. Greenberg,* 313 N.W.2d 4, 5–6 (Minn.1981) (holding that attorney who drafted deed conveying real property in joint tenancy did not owe fiduciary duty to surviving tenant who was not client); *see also McIntosh County Bank v. Dorsey & Whitney, LLP,* 745 N.W.2d 538, 547 (Minn.2008) (holding that attorney does not owe fiduciary duty to non-client who is not "direct and intended beneficiary" of attorney-client relationship).

■ The cases on which respondents rely, however, arise from conventional situations in which an attorney represents one party to a transaction or lawsuit but does not assume a special relationship with another party. The circumstances of this case are atypical but not uncommon. Although Olson had an adverse relationship to the Howells because of Olson's claim for unpaid attorney fees, the Howells joined together with Olson to find a means of inducing the Windsaloft defendants to make payment of the settlement amount. The chosen means was the retention, by Newby, of a specific amount of money in the Leffert Jay trust account that was intended to provide assurance to Olson that he could collect on any judgment he might obtain against the Howells. But for the collaboration between Olson and the Howells, it appears that the Howells would have found it more difficult, if not impossible, to receive payment from the Windsaloft defendants within the desired period of time. Olson and the Howells remained adverse parties, but the evidence nonetheless may support a finding that the Howells expressly agreed to allow a portion of the settlement proceeds to be retained by Newby in Leffert Jay's trust account for Olson's benefit. In essence, the Howells may have created a relationship between Newby and Olson that imposed on Newby a fiduciary duty to Olson with a limited purpose related to $31,000 in settlement proceeds.

Newby's argument that a fiduciary duty to Olson would conflict with his duty to the Howells is inconsistent with the Minnesota Rules of Professional Conduct, which specifically contemplate that an attorney may have a fiduciary duty to both a client and a non-client in these circumstances. The applicable rule provides that when a third party asserts a right to funds in an attorney's trust account, the funds should not be withdrawn until the dispute is resolved:

> If the right of the lawyer or law firm to receive funds from the account is disputed by the client *or third person claiming entitlement to the funds,* the disputed portion shall not be withdrawn until the dispute is finally resolved. If the right of the lawyer or law firm to receive funds from the account is disputed within a reasonable time after the funds have been withdrawn, the disputed portion must be restored to the account until the dispute is resolved.

Minn. R. Prof. Conduct 1.15(b) (emphasis added). Comment 4 to the rule is more explicit about an attorney's duty in this situation:

> Paragraph (b) ... recognizes that third parties may have lawful claims against specific funds or other property in a lawyer's custody, such as a client's creditor who has a lien on funds recovered in a personal injury action. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. In such cases, when the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved.

Minn. R. Prof. Conduct 1.15(b), cmt. 4. Thus, respondents may not avoid a finding that they owed a fiduciary duty to Olson on the ground that they owed conflicting duties to the Howells.

Furthermore, Newby continued to owe fiduciary duties to Olson notwithstanding the Howells' instructions to Newby to distribute funds to Weise, which could be construed to be an attempt to revoke the trust. A settlor may not unilaterally revoke a trust unless the settlor expressly reserved such power when the trust was created. *Dorcy v. First Trust Co. (In re Trust of Schroll)*, 297 N.W.2d 282, 284 (Minn.1980) (citing Restatement (Second) of Trusts, §§ 330–33 (1959)); *see also* George T. Bogert, *Trusts* § 148, at 527–28 (6th ed. 1987). The district court record does not contain any evidence that, at the time it was created, the Howells expressly reserved the power to revoke the trust. As stated above, Newby contends that he informed Olson that he "would not disregard the Howells' instructions" if they were to instruct him to disburse the settlement proceeds. But this contention is contradicted by Newby's deposition testimony. Newby's affidavit may not be offered to contradict his deposition testimony. *See Augustine v. Arizant Inc.*, 751 N.W.2d 95, 101 (Minn.2008). Moreover, Newby's conduct cannot be justified by an instruction from the Howells because a trustee may not "exercise [his] discretion in a manner that defeats the settlor's intent or the purposes of the trust." *Norwest Bank, N.A. v. Beckler*, 663 N.W.2d 571, 580 (Minn.App.2003) (citing *United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn.1994)).

Based on the Howells' communications and on the communications between and among Newby, Olson, and Keyes, the evidence is sufficient to allow a trier of fact to find the first element of a trust, "a designated trustee with enforceable duties." *Bond*, 691 N.W.2d at 837. The evidence also is sufficient to allow a trier of fact to find the second element of a trust, that Olson was the "designated beneficiary vested with enforceable rights." *Id.* The evidence also is sufficient to allow a trier of fact to find the third element of a trust because the $31,000 constitutes "a definite trust res in which the trustee has legal title and the beneficiary has the beneficial interest." *Id.*

Thus, Olson's evidence creates a genuine issue of material fact as to whether the Howells established a trust pursuant to which Newby owed Olson a fiduciary duty to maintain sufficient funds in the law firm's trust account until Olson's attorney lien was resolved. Accordingly, the district court erred by granting respondents' motion for summary judgment on Olson's claim of breach of fiduciary duty.

### II.

Olson argues that the district court erred by concluding, as a matter of law, that respondents may not be held liable for breach of contract. Olson con-

tends that respondents entered into an enforceable agreement to hold the settlement proceeds in the Leffert Jay trust account until Olson's claim against the Howells was resolved. A claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant. *Briggs Transp. Co. v. Ranzenberger*, 299 Minn. 127, 129, 217 N.W.2d 198, 200 (1974); *Commercial Assocs., Inc.*, 712 N.W.2d at 782. Whether a contract exists generally is a question for the fact-finder. *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn.1992).

■■■■ The parties' arguments are confined to the first element. "The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Commercial Assocs., Inc.*, 712 N.W.2d at 782 (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn.1983)). Formation of a contract is judged by the objective conduct of the parties rather than their subjective intent. *Id.* (citing *Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962)). The district court concluded that, for two reasons, "there was never any contract" between Olson and respondents. First, the district court reasoned that respondents were merely agents of the Howells. Second, the district court reasoned that there was no consideration to support a contract between respondents and Olson.

## A. Offer and Acceptance

■■■■ The district court concluded, as a matter of law, that no agreement was formed between Olson and respondents. Minnesota follows the "mirror image rule," which requires that an acceptance be "coextensive with the offer and may not

introduce additional terms or conditions." *Podany v. Erickson*, 235 Minn. 36, 38, 49 N.W.2d 193, 194 (1951); *see also Commercial Assocs., Inc.*, 712 N.W.2d at 782; *McLaughlin v. Heikkila*, 697 N.W.2d 231, 235 (Minn.App.2005), *review denied* (Minn. Aug. 24, 2005); *Gresser v. Hotzler*, 604 N.W.2d 379, 382 (Minn.App.2000).

■■■■ In his December 2, 2005, e-mail message, Olson offered to release his lien claim on the Howells' shares of Windsaloft stock and on the settlement proceeds "subject to the deposit of $32,000 of the settlement funds into the Leffert [Jay &] Polglaze trust account." Newby responded on December 5, 2005, by writing, "We will agree to place in an escrow account an amount sufficient to cover the amount of your lien petition request, and any interest that could legally be awarded." Subsequent correspondence between Olson and Newby clarified the precise amount that respondents would deposit in the Leffert Jay trust account. Olson rendered performance by executing the limited release contemplated by Newby. From this evidence, a reasonable trier of fact may conclude that Olson and Newby reached agreement on mutually satisfactory terms that imposed an obligation on Newby in his own capacity.

Olson challenges the district court's reasoning that respondents merely were agents of the Howells, while respondents argue that Newby was negotiating solely on behalf of the Howells. Respondents cite Newby's December 7, 2005, e-mail message to Olson, in which he wrote, "Please be advised that my clients have agreed to place $31,000 into my firm's escrow account." But Newby's December 5, 2005, e-mail message to Olson contains different language:

> *We will agree* to place in an escrow account an amount sufficient to cover the amount of your lien petition request,

and any interest that could legally be awarded. Please send a letter to Mike Keyes releasing him from all claims, and advising him that you stipulate to allow him to *release the settlement funds to me.*

(Emphasis added.) Newby's use of the first-person plural is significant but ambiguous. For example, the word "we" may refer to his clients and himself, to his firm and himself, or to all of those persons. Olson's contention that he entered into an agreement with Newby is reflected in his December 7, 2005, e-mail message to Keyes, which begins, "Pursuant to my agreement with Terry Newby and his firm, . . . ." In the same e-mail message, Olson also states that his attorney lien "shall continue by agreement with Mr. Newby and his clients."

■■■ Respondents argue that under the Restatement (Third) of Agency, an agent's use of the term "we" is not, by itself, a manifestation of assent to be bound personally, unless such language corroborates other evidence of assent by the agent. *Id.,* § 6.01, cmt. d. (2006). This section of the Restatement has not been adopted in Minnesota. To constrain the fact-finder's determination in such a manner may be inconsistent with Minnesota law. *See Powell v. MVE Holdings, Inc.,* 626 N.W.2d 451, 460 (Minn.App.2001) (holding that when analyzing contract formation, trier of fact "may look behind words to consider the surrounding facts and circumstances in the context of the entire transaction, including the purpose, subject matter and nature of it" (quotation omitted)), *review denied* (Minn. July 24, 2001). Regardless, Newby's use of the word "we" is corroborated by other evidence that tends to prove that he and unspecified others intended to undertake a contractual obligation concerning the settlement proceeds. In his December 7, 2005, e-mail message

to Olson, Newby states that $31,000 "will remain in my firm's escrow account pending the outcome of your lien petition." It would be reasonable for Olson to interpret that portion of the e-mail message to mean that Newby and Leffert Jay would cause the funds to remain in the firms' trust account. And as stated above, Olson's December 7, 2005, e-mail message reflects an understanding by Olson that Newby had assumed a personal contractual obligation. We note again Newby's contention that he informed Olson that he would hold the funds so long as his clients did not instruct him otherwise, but that evidence is in dispute, and we must view the record in the light most favorable to Olson.

Thus, in light of the evidence in the record, a genuine issue of material fact exists as to whether Olson and Newby entered into an agreement that obligated Newby (and perhaps his firm as well) to hold $31,000 of settlement proceeds in the Leffert Jay trust account pending resolution of Olson's lien claim.

## B. Consideration

■■■ The district court concluded, as a matter of law, that there was no consideration to support an agreement between Olson and respondents. "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party." *Kielley v. Kielley,* 674 N.W.2d 770, 777 (Minn.App.2004) (quotation omitted); *see also C & D Invs. v. Beaudoin,* 364 N.W.2d 850, 853 (Minn.App. 1985), *review denied* (Minn. June 14, 1985). The amount of consideration is irrelevant so long as some benefit or detriment is proved. *Estrada v. Hanson,* 215 Minn. 353, 356, 10 N.W.2d 223, 225–26 (1943). Consideration must be the result of a bargain. *Baehr v. Penn–O–Tex Oil Corp.,* 258 Minn. 533, 538–39, 104 N.W.2d 661, 665 (1960); *see also Deli v. Hasselmo,* 542

N.W.2d 649, 656 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996). As the Minnesota Supreme Court explained in *Baehr*:

"[B]argain" does not mean an exchange of things of equivalent, or any, value. It means a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other. Consideration thus insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation.

258 Minn. at 538–539, 104 N.W.2d at 665 (footnote omitted).

■ Respondents argue that "Leffert Jay did not obtain anything of value when it negotiated on the Howells' behalf." But consideration may be measured either by accrual of a benefit or accrual of a detriment. *See Kielley,* 674 N.W.2d at 777; *C & D Invs.,* 364 N.W.2d at 853. Olson sustained a legal detriment when he signed a limited release discharging the Windsaloft defendants from his lien claim. In addition, respondents received a benefit by virtue of the alleged agreement. Newby's December 23, 2005, e-mail message to Thomas Leffert states, "We are keeping $31,000 in our escrow account to cover fees, and a pending lien." This evidence is sufficient to prove that there was consideration to support an agreement between Olson and Newby or between Olson and respondents.

Thus, the district court erred by holding that there were no genuine disputes of material fact and by granting respondents' motion for summary judgment on Olson's claim of breach of contract.

## III.

Olson argues that the district court erred by concluding, as a matter of law, that respondents may not be held liable for conversion. The district court reasoned that Olson's conversion claim failed because at the time of the alleged conversion, "the funds which are the subject of this action were not the property of Plaintiff." Olson contends that he had a property interest in the settlement proceeds sufficient to support a claim of conversion. The dispositive issue with respect to this claim is whether Olson's interest in the settlement proceeds at the time Leffert Jay distributed the funds to itself and to Weise, which occurred before the district court established Olson's attorney lien, was an enforceable interest in the funds sufficient to support a conversion claim.

■ Conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997) (quotation omitted); *see also Hildegarde, Inc. v. Wright,* 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955). A lien holder may hold an individual liable for conversion if the individual interferes with the property that is the subject of the lien. *Conner v. Caldwell,* 208 Minn. 502, 508–09, 294 N.W. 650, 654 (1940). But a "plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion." *Lassen v. First Bank Eden Prairie,* 514 N.W.2d 831, 838 (Minn.App.1994) *review denied* (Minn. June 29, 1994); *see also Larson v. Archer–Daniels–Midland Co.,* 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948).

■ Attorney liens are governed by statute. *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.,* 295

N.W.2d 514, 516 (Minn.1980). The applicable statute provides:

> An attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the summons in the action, or the commencement of the proceeding, and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, *as against third parties, from the time of filing the notice of the lien claim, as provided in this section.*

Minn.Stat. § 481.13, subd. 1(a) (2006) (emphasis added). Olson contends that the last clause of subdivision 1(a) makes its lien effective against respondents from the time of its filing with the district court. Respondents, however, argue that perfection as to third parties must be accomplished by filing "as provided in this section." Minn.Stat. § 481.13, subd. 1(a). Perfection of an attorney lien in a client's personal property is accomplished by filing notice "in the same manner as provided by law for the filing of a security interest." Minn.Stat. § 481.13, subd. 2 (2006). Security interests are perfected by filing with the secretary of state. *See* Minn.Stat. §§ 336.9–312(a), –501(b) (2006). There is no evidence that Olson filed his lien with the secretary of state before Leffert Jay distributed all of the settlement proceeds from the trust account. Thus, Olson's lien was ineffective with respect to third parties.

Olson argues that respondents' actual notice of his lien claim perfected his rights in the settlements proceeds. He relies on *Northrup v. Hayward,* 102 Minn. 307, 113 N.W. 701 (1907), in which the plaintiff in the underlying suit had obtained a money judgment but then entered into a settlement agreement with the underlying defendant without informing the plaintiff's attorney. *Id.* at 309, 113 N.W. at 702. The plaintiff previously had agreed to pay his attorney one third of the settlement proceeds, and the defendant had "full notice" of the attorney's claim. *Id.* The attorney sought to reinstate the judgment so as to assert a lien upon the judgment under the 1905 version of the attorney-lien statute, which provided:

> An attorney has a lien for his compensation, whether the agreement therefor be express or implied: ... (5) Upon a judgment, to the extent of the costs included therein; and if there be a special agreement as to compensation, the lien shall extend to the amount thereof from the time of giving notice of his claim to the judgment debtor.

*Id.* at 309–10, 113 N.W. at 702 (quoting Minn. Rev. Laws § 2288, subds. 3, 5 (1905)). The *Northrup* court adopted a rule that "where the judgment debtor has actual notice of the lien or claim of the attorney ... it is sufficient to protect the rights of the attorney." *Id.* at 311, 113 N.W. at 703.

The *Northrup* opinion does not support Olson's argument because it arose under the portion of the attorney-lien statute dealing with a lien "upon a judgment." *Northrup* holds merely that actual notice is sufficient with respect to a "judgment debtor." *Id.* at 309–12, 113 N.W. at 702–03; *see also Balluff v. Balluff,* 169 Minn. 266, 267, 211 N.W. 462, 462 (1926) (affirming reinstatement of judgment to extent of amount owed to plaintiff's attorney where defendant had notice of plaintiff's attorney lien claim). Here, there has been no judgment and, thus, no judgment debtor. In the current version of the statute, the relevant language is found in Minn.Stat. § 481.13, subd. 1(b). Olson's claim is against respondents, who are not parties to his claim against the Howells. Olson's

claim could be perfected as against respondents only by filing with the secretary of state as provided in subdivisions 1(a) and 2(b).

Thus, at the time Leffert Jay transferred settlement proceeds from its trust account to Wiese and to itself, Olson's lien claim was unenforceable because it had not been perfected as required by section 481.13, subdivision 1(a). Accordingly, the district court did not err by granting summary judgment to respondents on Olson's claim of conversion.

## DECISION

The district court erred by granting summary judgment to respondents on Olson's claims of breach of fiduciary duty and breach of contract. Those two claims are remanded for further proceedings. The district court did not err by granting summary judgment to respondents on Olson's claim of conversion.

**Affirmed in part, reversed in part, and remanded.**