KMART CORPORATION, Relator,

v.

COUNTY OF CLAY, Respondent,

and

American Crystal Sugar Company, Relator,

v.

County of Clay, Respondent.

Nos. A05–590, A05–591.

Supreme Court of Minnesota.

March 30, 2006.

14. Appointed pursuant to Minn. Const. art. VI, §§ 2, 10, and Minn.Stat. § 2.724, subds. 1, 2 (2004).

Thomas R. Wilhelmy, Steven J. Quam, Fredrikson & Byron, P.A., Minneapolis, MN, for Relator, Kmart Corporation.

Kenneth Kohler, Clay County Attorney, Michelle C. Winkis, Chief Assistant County Attorney, Moorhead, MN, for Respondent, County of Clay.

Myron L. Frans, Mark D. Savin, Lisa R. Pugh, Faegre & Benson, L.L.P., Minneapolis, MN, for Relator, American Crystal Sugar Company.

## OPINION

PAGE, Justice.

In two separate appeals, relators, American Crystal Sugar Company (ACS) and Kmart Corporation (Kmart), appeal the Minnesota Tax Court's dismissals of their 2003 Clay County real property tax petitions. ACS and Kmart assert separate and distinct tax claims that were litigated separately in the tax court and separately appealed and briefed to this court. Nevertheless, because the procedural facts and legal issues presented by the two appeals are identical, we address both appeals in this combined opinion. Respondent Clay County (County) filed motions to dismiss the tax petitions, contending ACS and Kmart failed to properly serve the county assessor and the county attorney as re-

quired by Minn.Stat. § 278.01, subd. 1(a) (2004). The County also claimed that ACS and Kmart failed to timely file proof of service as required by Minn.Stat. § 278.01, subd. 1(c) (2004). ACS and Kmart opposed the County's motions, arguing the service on the county assessor and the county attorney was adequate in light of the officials' refusal to accept service. Further, they argued that their failure to file proof of service by the statutory deadline did not deprive the tax court of jurisdiction. The tax court granted the County's motions to dismiss, holding that for purposes of Minn.Stat. § 278.01, subd. 1(a), ACS and Kmart failed to personally serve the county assessor and the county attorney. The court also held that ACS and Kmart could not use facsimile service under Minn. R. Civ. P. 5.01 for original tax petitions. The court, therefore, concluded that it did not have jurisdiction over ACS's and Kmart's tax petitions.

On appeal, ACS and Kmart argue that the tax court erred in concluding that it did not have jurisdiction over their tax petitions and in granting the county's motions to dismiss. Specifically, ACS and Kmart claim that: (1) the court erroneously determined that they had failed to personally serve the county assessor and the county attorney pursuant to Minn.Stat. § 278.01, subd. 1(a); (2) the court erred in concluding their attempt to serve the original petitions under Minn. R. Civ. P. 5.01 by facsimile was ineffective; and (3) their failure to timely file the required proof of service under Minn.Stat. § 278.01, subd. 1(c), did not deprive the tax court of jurisdiction. We affirm.

In April 2003, ACS and Kmart hired Metro Legal Services (Metro Legal) to file tax petitions in Clay, Becker, and Norman Counties.[1] Minnesota Statutes § 278.01,

1. Metro Legal contracted the task to an inde-    pendent process server, who then hired an

subd. 1(a), provides that a taxpayer may challenge a county's property tax assessment "by serving one copy of a petition for such determination upon the county auditor, one copy on the county attorney, one copy on the county treasurer, and three copies on the county assessor." Subdivision 1(c) of section 278.01 provides that the taxpayer "must file the copies [of the petition] with proof of service, in the office of the court administrator of the district court on or before April 30 of the year in which the tax becomes payable."

On April 30, 2003, Metro Legal successfully served and filed tax petitions for ACS, Kmart, and a third taxpayer not involved in this appeal in Becker County and Norman County. Metro Legal proceeded to Clay County, arriving at the county auditor's office shortly after 4:10 p.m. Once there, the petitions were served on the county auditor, who reviewed the petitions, signed the acknowledgements of service on the back of the petitions, and returned a signed original and a signed copy of each petition to Metro Legal.

Metro Legal proceeded across the hall to the Clay County Treasurer's office at approximately 4:15 p.m. and handed the petitions to the county treasurer, Betty Swetland, who reviewed the petitions of ACS and the third party before signing the acknowledgment of service. After that, Swetland looked at a clock and said, "It is 4:33 p.m., I am not going to accept the [Kmart petition]. You can come back in the morning because we are closed."

After leaving the treasurer's office, Metro Legal walked across the parking lot to the Clay County Courthouse, where the county assessor and the county attorney are located, and discovered that the doors were locked. At approximately 5:00 p.m.,

Metro Legal called the county assessor at his home in an effort to arrange service of the petitions that evening. The county assessor informed Metro Legal that his office was closed, that Metro Legal had until 4:30 to serve the petitions, and that he was not available to be served that evening, but could be served the next day. After several attempts to locate and serve the county assessor at home failed, Metro Legal left copies of the petitions between the storm door and the front door of the county assessor's home.

Metro Legal also called the county attorney at her office and home, but did not reach her. The county attorney returned Metro Legal's call at about 5:30 p.m. According to Metro Legal, the county attorney said that Metro Legal had until 4:30 to serve the papers and was "out of luck." The county attorney, however, testified that she did not tell Metro Legal that she was not going to accept service that night and that she "would never say those words." According to the county attorney, she told Metro Legal that she would be at work the next day and she could be served then. Subsequent efforts to find the county attorney at her office, home, and at a soccer field were unsuccessful and, ultimately, copies of the petitions were left underneath a rug on the porch of the county attorney's home.

Sometime after 9:30 that evening, Metro Legal began faxing copies of all of the tax petitions to the offices of the county treasurer, county assessor, and county attorney and the Clay County Court Administrator. Regarding proof of service, the record indicates that the court administrator's office received the back page of the Kmart petition, which included the county

---

assistant to serve the petitions. In this opinion, we refer to both the processor server and the assistant as Metro Legal.

auditor's acknowledgment of service. The record, however, does not indicate that the back page of the ACS petition, which contained the county auditor and county treasurer's acknowledgement of service, was received. Moreover, none of the petitions included proof of service, by either acknowledgement or affidavit, on the county assessor and the county attorney. On May 1, 2003, Metro Legal filed the original petitions with affidavits of service upon the county assessor and the county attorney in the Clay County Court Administrator's office, indicating that copies of the petitions had been left at the county assessor and the county attorney's homes, as well as faxed to their respective offices.

■ ■ "We review tax court decisions to determine whether the court lacked jurisdiction, whether the court's decisions are supported by the evidence and in conformity with the law, and whether the court committed any other error of law." *Bond v. Comm'r of Revenue,* 691 N.W.2d 831, 835 (Minn.2005). While not bound by the tax court's decisions, we will only overrule the court if its decision "is clearly erroneous because the evidence as a whole does not reasonably support the decision." *Id.* at 835–36. Moreover, we review the tax court's legal determinations de novo. *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005). When, as here, the resolution of the parties' claims turn on the application of a statute to undisputed facts, the applicable standard of review is de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue,* 488 N.W.2d 254, 257 (Minn.1992).

■ ■ These cases raise a number of issues. The primary issue is whether ACS and Kmart served the tax petitions on the Clay County Assessor, Clay County Attorney, Clay County Auditor, and Clay County Treasurer on or before April 30, 2003, as required by Minn.Stat. § 278.01, subd.

1. In our view, resolution of this issue is dispositive of this case. Because there appears to be no dispute between ACS, Kmart, and the County as to whether ACS and Kmart timely served the petitions on the county auditor and the county treasurer, we focus our attention on whether the county attorney and county assessor were effectively served.

ACS and Kmart first argue that personal service was complete when they made reasonable attempts to serve the petitions and the county assessor and the county attorney refused to accept them. ACS and Kmart further argue that, as public officials, the county assessor and the county attorney had an obligation to cooperate with their attempts to serve them on April 30, even after regular business hours. Clay County does not directly address the question of whether leaving copies of the tax petitions at the county assessor and the county attorney's homes qualifies as adequate service under Minn.Stat. § 278.01, subd. 1(a). Instead, the county simply asserts that the service was incomplete and argues that the lack of complete service was due to ACS's and Kmart's own negligence. The county further asserts that the county assessor and the county attorney acted appropriately on April 30, 2003, because county officials are not required to be available to the public outside of their 8:00 a.m. to 4:30 p.m. "duty day."

Minnesota Statutes § 278.01, subd. 1(a), requires service on the four designated county officials to initiate a property tax claim, but the method of service required is not defined in the statute. Rule 81 of the Minnesota Rules of Civil Procedure provides that the rules of civil procedure govern chapter 278 proceedings as long as the provisions of the statute and the rules are consistent and not in conflict. Minn. R. Civ. P. 81.01; *see also* Minn.Stat. § 271.06, subd. 7 (2004) (providing that the

rules of civil procedure apply to proceedings in the tax court where practicable). In requiring service of a petition, section 278.01, subdivision 1(a), prescribes the means of initiating a property tax claim under chapter 278 in either district court or tax court. The permissible methods of serving the pleadings that initiate a civil action in district court (and through section 271.06, subdivision 7, in tax court) are prescribed in Minn. R. Civ. P. 4. Because chapter 278 contains no definition of service, there is no conflict between the statute and the rule that would prevent application of the rule. Accordingly, we will look to Minn. R. Civ. P. 4 for the parameters of effective service under section 278.01, subdivision 1(a).

Here, Metro Legal attempted service on the county assessor and the county attorney by two methods: personal service and service by facsimile. Rule 4 does authorize personal service of initiating documents, specifying the methods for personal service on an individual in Minn. R. Civ. P. 4.03(a). As applicable here, Rule 4.03(a) provides that personal service can be accomplished "by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." ACS and Kmart do not contend that Metro Legal delivered copies of the petition to the officials personally or left copies with any person at the officials' usual places of abode. Accordingly, they did not effect valid personal service on the officials in the manner authorized in Rule 4.03(a).

Further, on this record, we find no merit in ACS's and Kmart's argument that, even if the service in question was technically incomplete, the county is not entitled to dismiss their tax petitions because the failure to complete the service was caused by the county assessor's and the county attorney's refusal to accept the service. In support of this argument, ACS and Kmart rely on *Nielsen v. Braland,* 264 Minn. 481, 119 N.W.2d 737 (1963), and *Carlson v. Cohen,* 302 Minn. 531, 223 N.W.2d 810 (1974). Neither case is helpful to relators. *Nielsen* stands for the proposition that a defendant could not physically refuse to accept service when the defendant was in close proximity to the processor server, was touched with summons, and the summons was laid in a place easily accessible to him. 264 Minn. at 484, 119 N.W.2d at 739. *Carlson* stands for the proposition that placing the summons and complaint under the windshield wiper of a defendant's car as the defendant attempted to evade service in the driveway of her home constitutes proper service. 302 Minn. 531, 223 N.W.2d 810. In each case, the process server was in close proximity to the person being served when the person being served either refused service or took steps to avoid being served. That is not the case here. In this case, Metro Legal was never in close physical proximity to either the county attorney or the county assessor and neither of the officials took any extraordinary step to avoid service. We also note that, while ACS and Kmart assert that the county officials had a statutory duty to make themselves available for service after county business hours, they cite no authority for that proposition; nor have we found any. While county officials may choose to make themselves available for service after business hours, we find no basis on which to conclude that they are legally obligated to do so.

■ ACS and Kmart also argue that their facsimile transmission of the petitions to the assessor and the county attorney on the evening of April 30, 2003, qualified as effective service under Minn.Stat. § 278.01, subd. 1(a). According to ACS and Kmart, under "Minn. R. Civ. P.

4.03(e)(1)[,] a lawsuit against a county is commenced by personal service of the county auditor," while Minn. R. Civ. P. 5.01 and 5.02 provide "every pleading subsequent to the original complaint" can be made, among other means, by "transmitting a copy by facsimile machine to the attorney, or the party's office." Because the county auditor was the first official served in the instant case, ACS and Kmart assert that "service on the other officials was service subsequent to the original complaint." We disagree.

Rule 4 of the Minnesota Rules of Civil Procedure does not include any provision for service by facsimile. Facsimile service is authorized under Minn. R. Civ. P. 5.02, but Rule 5 applies only to service of documents after an action has been initiated. *See* Minn. R. Civ. P. 5.01; *see also* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* § 4.6 (4th ed. 2002) ("Rule 4 should not be confused with Rule 5, which allows service by fax or mail only after a lawsuit has been properly commenced by using a Rule 4 method of service."). Minnesota Statutes § 278.01, subd. 1(a), states that to initiate a challenge to a county's property tax assessment the petition must be served on the county's auditor, treasurer, attorney, and assessor. Therefore, we read section 278.01 subdivision 1(a), to require service on each of the officials in order to commence the action. Thus, effective service of the petition on one of the officials does not make service of the petition on the other officials service of a "pleading subsequent to the original." Because facsimile service is not authorized for service of initiating documents in the rules of civil procedure, we agree with the tax court that faxing the petitions to the offices of the county assessor and the county attorney did not effect valid service.

Having concluded that ACS and Kmart failed to make effective service of their tax petitions on the Clay County Assessor and Clay County Attorney as required by section 278.01, subdivision 1(a), we need not address their other contentions. Accordingly, we affirm the dismissal of their tax petitions.

Affirmed.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring).

I concur with the majority because I agree that ASC's and Kmart's service was defective, as the county attorney and the county assessor were not appropriately served on or before April 30, 2003, as required by Minn.Stat. § 278.01, subd. 1(a) (2004). But the inappropriate nature of the Clay County Treasurer's actions in this case and the possibility that the majority opinion might be interpreted to condone such prejudicial behavior induces me to write separately. As the majority notes, Metro Legal arrived at the Clay County Treasurer's Office and handed the petitions to the Clay County Treasurer at 4:15 p.m. on April 30, 2003. Upon being handed the petitions, the treasurer perused them for approximately 18 minutes before signing the acknowledgement of service. After signing the acknowledgement, the treasurer then announced, "It is 4:33 p.m., I am not going to accept the [Kmart petition]. You can come back in the morning because we are closed."

It is undisputed that Metro Legal entered the Clay County Treasurer's Office during business hours and effectively served the treasurer with the required petitions 15 minutes before office closing time. Further, the county acknowledges

that service upon the treasurer was effectively made. Nevertheless, the treasurer's decision to hold the Kmart petition for over 15 minutes—until after closing time—and then announce that, because her office was now closed, she would not accept the Kmart petition raises a valid question about her behavior. A public official cannot attempt to thwart effective service simply by refusing to acknowledge a document she is holding in her hand until after the acceptable time of service has elapsed. Based on the record before us, I conclude that ASC's and Kmart's petitions were validly served upon the treasurer before closing time for the Clay County Treasurer's Office and as such the treasurer should have honored her public trust by accepting service. If service upon the treasurer had been the only impediment to ASC and Kmart avoiding dismissal of their petitions because of defective service, I would reverse and let them proceed with their actions.