**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1135**

Douglas Drews,
Appellant,

vs.

Federal National Mortgage Association,
Respondent.

**Filed July 21, 2014
Affirmed
Halbrooks, Judge**

Scott County District Court
File Nos. 70-CV-12-944, 70-CV-11-21921

Lawrence A. Moloney, Michael Hagedorn, Southern Minnesota Regional Legal Services, Inc., St. Paul, Minnesota (for appellant)

Amanda M. Govze, Kalli L. Ostlie, Shapiro & Zielke, LLP, Burnsville, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

## S Y L L A B U S

Minn. Stat. § 580.03 (2012) requires a notice of foreclosure sale to be served in like manner as a summons in a civil action. Service cannot be avoided by physically refusing to accept the papers. When a party produces evidence of proper service, the burden shifts to the party challenging service to show by clear and convincing evidence that service was improper. Shifting the burden of production is not inconsistent with the strict-compliance standard applicable to Minn. Stat. § 580.03.

## O P I N I O N

**HALBROOKS**, Judge

Following a bench trial in a quiet-title action, appellant argues that the district court erred when it ruled that service of the notice of foreclosure sale was properly effectuated under Minn. Stat. § 580.03. Because we conclude that the service requirements of the statute were satisfied, we affirm.

## FACTS

In 2004, appellant Douglas Drews borrowed money from Key Mortgage Corporation to refinance a loan for the home where he had lived since 1984. He secured the loan with a mortgage on the property, which was ultimately assigned to Everhome Mortgage Company. After Drews failed to make payments on the loan in the summer of 2010, Everhome Mortgage began a foreclosure by advertisement.

On November 3, 2010, after 15 earlier unsuccessful attempts, a Metro Legal process server purportedly served Drews with a notice of foreclosure sale and related documents (foreclosure documents) at his home. The original affidavit of service states that the process server "served the attached by handing to and leaving with Douglas H. Drews personally one (1) true and correct copy thereof." The foreclosure sale occurred on December 16, 2010, and on January 14, 2011, the purchaser, Everhome Mortgage, assigned the sheriff's certificate of mortgage sale to respondent Federal National Mortgage Association (Fannie Mae). By complaint filed October 10, 2011, Fannie Mae began eviction proceedings seeking to recover possession of the premises.

On January 12, 2012, Drews filed a quiet-title action against Fannie Mae, asserting that the foreclosure sale was defective because he had not been properly served with the notice of foreclosure sale. Fannie Mae moved for summary judgment on October 22, 2012, attaching a second, more detailed affidavit by the process server. This affidavit states that on November 3, after numerous unsuccessful service attempts and based on information from Drews's ex-wife, the process server performed a "stakeout" at Drews's property from 6:00 p.m. through 8:15 p.m. Neighbors had confirmed that Drews was the only occupant of the property, and the process server had previously left voicemail messages for Drews at two different phone numbers, explaining that he had foreclosure papers to serve.

Through an open, lower-level window, the process server observed a man who fit Drews's description standing about 10-15 feet away from him, working on a lathe or grinding machine. After about 90 minutes, the man walked within three feet of the window and made eye contact with the process server, who explained that he was there to serve foreclosure documents. The process server asked the man to come to the door to accept the papers, but the man froze and did not respond. The man eventually walked away from the window. The process server "vocalized that since Mr. Drews would not accept the service documents, I would tape the foreclosure documents to the front door of the house." The man left the room and closed an interior door. The process server taped the foreclosure documents to the front door of the house and left. Later, when the process server returned, the documents remained taped to the door.

Drews responded to Fannie Mae's summary-judgment motion with his own affidavit stating that it was not possible to see his grinding machine from the window, denying that he had a conversation with the process server on November 3 or on any other date, and stating that in mid-December he had found the notice of foreclosure sale on the ground outside his house near a door he never uses. The district court denied Fannie Mae's summary-judgment motion because, viewing the facts in the light most favorable to the plaintiff, there was a genuine issue of material fact as to whether the process server "took the type of action that would convince a reasonable person that personal service was being attempted."

On February 20, 2013, the district court held a trial on the sole issue of whether service of the notice of foreclosure sale was properly effectuated under Minn. Stat. § 580.03. The district court heard testimony from the process server, Drews, and three witnesses called by Drews. The process server testified that on November 3, between 6:00 p.m. and 8:15 p.m., he observed through a window of Drews's home a man who fit Drews's description, who was working on a grinding machine that was just out of sight. The process server eventually made contact with Drews to explain his purpose and then taped the foreclosure documents to the front door when Drews failed to emerge.

Drews testified that he was not at home during the evening of November 3, he had never seen the process server before the day of trial, and he had found the notice of foreclosure sale on the ground outside his house in mid-December. Drews specifically testified that during the evening of November 3, he was working on a rooftop construction project in Minneapolis. Drews offered receipts and invoices relating to the

4

construction work he was doing around that date, but none of those exhibits showed that Drews was away from home between 6:00 p.m. and 8:15 p.m. on November 3. And none of Drews's witnesses could recall where Drews had been during that time.

The district court found that the process server's testimony was credible and plausible. The district court noted, "[t]his is not to say that [Drews] was not credible. It is quite possible that he simply does not remember what happened that night because it was a surprising and stressful situation." The district court found that Drews is a partially disabled Vietnam veteran who suffers from post-traumatic-stress disorder. It also found that "[t]he only reasonable way a person outside the home would know [that Drews's grinding] machine was there would be to hear it in operation and partially see the person using it through the door while not seeing the machine itself."

The district court observed that, although the litigation had been pending for more than a year and Drews had submitted affidavits to the district court regarding the issue of service, he had never asserted until trial that he was not at home during the evening of November 3. The district court noted that service cannot be avoided by physically refusing to accept the papers. The district court determined that Drews had raised some doubts about service, but had not "produced clear and convincing evidence that service was not accomplished as alleged by [the process server]." The district court therefore ruled that Fannie Mae had properly foreclosed upon the property. This appeal follows.

5

**ISSUE**

Did the district court err in ruling that service of the notice of foreclosure sale was properly effectuated?

**ANALYSIS**

"Whether service of process was effective is a question of law that [appellate courts] review de novo." *Roehrdanz v. Brill*, 682 N.W.2d 626, 629 (Minn. 2004). In conducting this review, appellate courts apply the facts as found by the district court unless those factual findings are clearly erroneous. *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008) (citing Minn. R. Civ. P. 52.01). We defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

**Minn. Stat. § 580.03**

When a property is foreclosed by advertisement, a copy of the notice of foreclosure sale "shall be served in like manner as a summons in a civil action" on "the person in possession of the mortgaged premises, if the same are actually occupied." Minn. Stat. § 580.03. It is undisputed that the premises here were occupied by Drews, who lived alone. Service was therefore required to be made personally on Drews. Unlike the related eviction statute, the foreclosure-by-advertisement statute includes no qualifiers on the "like manner as a summons in a civil action" clause when the defendant or occupant cannot be found. *Compare* Minn. Stat. § 580.03, *with* Minn. Stat. § 504B.331(a)-(d) (2012) (stating that in situations where the occupant cannot be found, the summons may be left at the defendant's last place of abode with a person of suitable age and discretion or the summons may be posted in a conspicuous place on the

property); *see also Koski v. Johnson*, 837 N.W.2d 739, 744-45 (Minn. App. 2013) (interpreting Minn. Stat. § 504B.331), *review denied* (Minn. Dec. 17, 2013).

**Strict-Compliance Standard**

The Minnesota Supreme Court has articulated a strict-compliance standard for specific sections of the foreclosure-by-advertisement statute. *See, e.g.*, *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56-58 (Minn. 2013) (requiring strict compliance with Minn. Stat. § 580.02(3) (2012)); *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494-501 (Minn. 2009) (addressing Minn. Stat. §§ 580.02, .04 (2006), and noting the requirement of strict compliance, but determining that assignment of underlying indebtedness is not an assignment of mortgage and therefore need not be recorded before a foreclosure by advertisement can be commenced); *Moore v. Carlson*, 112 Minn. 433, 434, 128 N.W. 578, 579 (1910) (applying strict-compliance standard to foreclosure-by-advertisement requirement that all assignments be included in notice of foreclosure sale). It follows that a strict-compliance standard also applies to the service requirements of Minn. Stat. § 580.03. *See Hunter v. Anchor Bank, N.A.*, 842 N.W.2d 10, 14 (Minn. App. 2013), *review denied* (Minn. Mar. 18, 2014) (interpreting Minn. Stat. § 580.08 (2012) and noting that "[t]he *Jackson* opinion suggests that strict compliance is required for all statutes within chapter 580, not just for section 580.02.").

Strict compliance requires a foreclosing party to demonstrate "exact compliance" with a statute's requirements. *Beecroft v. Deutsche Bank Nat'l Trust Co.*, 798 N.W.2d 78, 83 (Minn. App. 2011) (quoting *Jackson*, 770 N.W.2d at 494), *review denied* (Minn. July 19, 2011). Absent strict compliance with the foreclosure statute, the foreclosure

7

proceeding is void. *See Beecroft*, 798 N.W.2d at 83. Here, service of the notice of foreclosure sale must have strictly complied with the statutory requirement that it be "served in like manner as a summons in a civil action," Minn. Stat. § 580.03, or the foreclosure proceeding is void. *See Beecroft*, 798 N.W.2d at 83.

**Minn. R. Civ. P. 4.03(a)**

A summons in a civil action is served "by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03(a). Personal delivery is satisfied "if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted," because "service cannot be avoided by physically refusing to accept the summons." *Nielsen v. Braland*, 264 Minn. 481, 484, 119 N.W.2d 737, 739 (1963); *see also Carlson v. Cohen*, 302 Minn. 531, 531, 533, 223 N.W.2d 810, 811-12 (1974) (personal service effected by placing the summons and complaint under the windshield wiper of car "as [defendant] attempted to evade service in the driveway of her home"); *cf. Kmart Corp. v. Cnty. of Clay*, 711 N.W.2d 485, 489 (Minn. 2006) (service not effected when process server "was never in close physical proximity to" the defendants and neither defendant "took any extraordinary step to avoid service").

After a full trial on the sole issue of service, the district court here credited the process server's account of events: on the evening of November 3, Drews and the process server were within speaking distance of each other, the process server explained that he was there to serve foreclosure documents, Drews refused to accept the papers, and the

process server taped the foreclosure documents to the door of his house. Giving due deference to the district court's credibility determinations, we conclude that the record supports the district court's determination about the exchange between Drews and the process server during the evening of November 3. Because the district court's factual findings are not clearly erroneous, we will not disturb them. *See Shamrock*, 754 N.W.2d at 382.

We now turn to whether these findings of fact support a legal conclusion that Drews was properly served. There is ample evidence in the record that Drews had taken "extraordinary steps to avoid service." This was Metro Legal's sixteenth attempt at service and involved a "stakeout" of the property based on information obtained from Drews's neighbors and ex-wife. The district court noted that this particular process server "had made repeated efforts at serving [Drews] over multiple days."

The process server spoke to Drews from approximately three feet away, through an open window containing a "permeable wire-mesh screen." Although the process server was not able to reach out and touch Drews with the papers (as the process server had in *Nielsen*, 264 N.W.2d at 482, 119 N.W.2d at 738), we conclude that taping the papers to Drews's front door after speaking to him through a window is analogous to placing the papers under a windshield wiper of an occupied vehicle (as the process server did in *Carlson*, 302 Minn. at 531, 223 N.W.2d at 811).

**Burden of Production**

In reaching its determination regarding the effectiveness of service, the district court relied on caselaw providing that when evidence of proper service is produced, the

burden shifts to the party challenging service to show by clear and convincing evidence that service was improper. Drews argues that shifting the burden of production to the party challenging service is inconsistent with the strict-compliance requirement of Minn. Stat. § 580.03. We disagree. As the plaintiff, Drews bears an overall burden, and the burden of production can shift from party to party throughout the litigation. *Cf. Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988) ("The party moving for summary judgment under Rule 56, Minn. R. Civ. P., must demonstrate no genuine issue of material fact exists. One asserting the statute of limitations also has the burden of proving all the elements of that affirmative defense. However, when the moving party makes out a prima facie case, the burden of producing facts that raise a genuine issue shifts to the opposing party." (citations omitted)).

In *Shamrock*, our supreme court concluded that Minn. R. Civ. P. 4.04(a), which provides for service of process by publication, is subject to a strict-compliance standard because it is in derogation of the common law. 754 N.W.2d at 382-83. In determining whether a plaintiff had strictly complied with the requirements of service by publication, the supreme court applied the burden-shifting analysis that Drews asserts is incompatible with a strict-compliance standard. *Id.* at 384 ("Once the plaintiff submits evidence of service, a defendant who challenges the sufficiency of service of process has the burden of showing that the service was improper."). A party challenging strict compliance with service requirements is therefore not excused from rebutting prima facie evidence of proper service with clear and convincing evidence that service was invalid.

10

Drews relies heavily on *Jackson*, arguing that the district court here ignored *Jackson's* "mandate" that the foreclosing party "show exact compliance" with the terms of the statute. 770 N.W.2d at 494. But *Jackson*'s directive is not a new statement of the law, *see Moore*, 112 Minn. at 434, 128 N.W.2d at 579 ("One who avails himself of [the foreclosure-by-advertisement statute]'s provisions must show an exact and literal compliance with its terms . . . ."), and it is not central to its analysis. After reviewing the strict-compliance standard, the supreme court in *Jackson* held that an assignment of the underlying indebtedness is not an assignment of a mortgage for purposes of section 580.02 and therefore need not be recorded before commencing foreclosure by advertisement. 770 N.W.2d at 498.

Fannie Mae presented two affidavits of the process server and his trial testimony as evidence of proper service of the notice of foreclosure sale. "[A]n affidavit of service is usually strong evidence of proper service . . . [which] may [only] be overcome by the production of clear and convincing evidence." *Peterson v. Eishen*, 495 N.W.2d 223, 225-26 (Minn. App. 1993) (citation omitted), *aff'd*, 512 N.W.2d 338 (Minn. 1994). Drews attempted to rebut Fannie Mae's evidence of service with his own affidavit and testimony disputing that he was served and by challenging the legitimacy of the process server's original affidavit of service.

After considering all of the evidence presented at trial, the district court found that, although the original affidavit of service was neither fact-based nor detailed, it did not impair the credibility of the process server as Drews had urged. And it was not the only evidence of service offered by Fannie Mae. The district court determined that although

11

Drews "raised some doubts about service . . . he has not produced clear and convincing evidence that service was not accomplished as alleged by [the process server]." Having determined that Fannie Mae served the notice of foreclosure sale as required by section 580.03 and Minn. R. Civ. P. 4.03(a), the district court ruled that Fannie Mae properly foreclosed upon the property. We agree.

Giving due deference to the district court's factual findings about the events of November 3, in light of the caselaw regarding avoidance of service, and applying the proper burden-shifting framework, we conclude that the district court properly determined that service of the notice of foreclosure sale was valid and effective. We therefore conclude that the property was foreclosed upon in strict compliance with Minn. Stat. § 580.03.

## D E C I S I O N

Because appellant failed to overcome evidence of service of the notice of foreclosure sale and no other statutory requirements were challenged, the strict-compliance standard of Minn. Stat. § 580.03 was satisfied, and respondent properly foreclosed upon the property. We therefore affirm the district court's decision.

**Affirmed.**