*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0803**

Steven J. Jaeger,
Respondent,

vs.

Palladium Holdings, LLC,
Appellant,

Franklin Financial, LLC, et al.,
Defendants

**Filed April 6, 2015
Affirmed
Worke, Judge
Dissenting, Connolly, Judge**

Hennepin County District Court
File No. 27-CV-13-3083

Mark E. Berglund, Berglund & Berglund, Anoka, Minnesota; and

James W. Delaplain, Minneapolis, Minnesota (for respondent)

Jack E. Pierce, Sarah L. Krans, Matthew S. Greenstein, Bernick Lifson, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the district court's determination that it failed to provide lawful notice of a foreclosure sale. We affirm.

## FACTS

Respondent Steven J. Jaeger owned a townhouse in St. Louis Park (the property). In 2011, Jaeger took a job out of state. He would travel to the Twin Cities about twice per month to visit relatives and handle personal business. Jaeger estimated that he stayed at the property fewer than 20 times in three years.

After Jaeger became delinquent on required association dues, defendant Skyehill Townhomes Association, Inc. commenced a proceeding to foreclose its lien by advertisement. The property was sold at a sheriff's sale to Skyehill for $4,909. In September 2011, Skyehill assigned its sheriff's certificate of sale to defendant Franklin Financial, LLC, which in turn deeded the certificate to appellant Palladium Holdings, LLC.

Jaeger failed to redeem the property within six months. Jaeger only became aware of the foreclosure sale in February 2013 after he was evicted. Jaeger sought a declaratory judgment that he was the rightful owner of the property because the sheriff's sale was void due to failure to properly serve notice.

The jury found that a notice of association lien foreclosure sale was served upon J.C., Jaeger's adult son, on May 12, 2011. But the jury also found that Jaeger had no actual notice of the sale. Relying on the jury's findings and its own findings that J.C.

lived at a separate address at and around the time notice was served upon him, checked on the property about 25 times per year, stayed overnight at the property perhaps a couple of times, and did not receive mail at his father's address other than his vehicle registration because his vehicle is registered in both his and his father's names, the district court concluded that J.C. was not a person "then residing therein" and thus that substitute service upon J.C. was ineffective. The district court declared the sheriff's sale void and pronounced Jaeger the rightful owner of the property. Palladium appeals.

## D E C I S I O N

Whether service of process was effective is reviewed de novo. *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008). The district court's findings of fact are accepted unless clearly erroneous. *Id.* A district court has personal jurisdiction over civil defendants only if the summons is properly served. *Id.* Construction and application of the Minnesota Rules of Civil Procedure are also reviewed de novo. *Id.*

### *Then residing therein*

Palladium first argues that J.C. was "then residing therein," and thus substitute service upon him was proper. To be effective, service of process "must accord strictly with statutory requirements." *Lundgren v. Green*, 592 N.W.2d 888, 890 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. July 28, 1999). Service of process in a manner not specifically authorized is ineffective. *Id.* An exception to the strict-adherence requirement exists when a party has received actual notice and the substitute service was delivered at that party's place of abode. *Thiele v. Stich*, 425 N.W.2d 580,

3

584 (Minn. 1988). In such a case, "substantial" rather than strict compliance is acceptable. *Id*.

In the context of a foreclosure by advertisement, the foreclosing party must serve a copy of the notice of foreclosure sale upon the person in possession of the property at least four weeks before the sale "in like manner as a summons in a civil action." Minn. Stat. § 580.03 (2014). Thus, service must be made "[u]pon an individual by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03(a). "Rule 4 is to be strictly applied and enforced." 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 4:6 (5th ed. 2009); *see Lebens v. Harbeck*, 308 Minn. 433, 433-34, 243 N.W.2d 128, 129 (1976) (noting that when a statute directs that service "shall be made in the same manner as service of a summons in a civil action," "the provisions of the statute relating to the filing and service of notice . . . must be strictly followed"). "If a defendant has no actual knowledge of an action, the service methods authorized by Rule 4 are to be strictly followed." 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 4:6.

Palladium asserts that service upon J.C. was proper because it was reasonably calculated to provide notice to Jaeger. In support, Palladium cites few precedential cases from Minnesota, primarily relying upon *Goldsworthy v. State, Dep't of Pub. Safety*, 268 N.W.2d 46 (Minn. 1978), and *O'Sell v. Peterson*, 595 N.W.2d 870 (Minn. App. 1999).

*Goldsworthy*'s discussion of reasonably calculated notice comes from the portion of the opinion describing the requirements of *constitutional* due process under the

4

Fourteenth Amendment; the appellant in that case had made a constitutional challenge. 268 N.W.2d at 48. Here, we are dealing with the notice requirements of a *statute*, and a statutory requirement is additional to, and sits atop, the minimum level of notice constitutionally required. *See David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d 370, 372 (Minn. 1977) (noting that both the requirements of the constitution and the applicable statute must be satisfied for in personam jurisdiction over nonresident defendants). Our caselaw discusses the importance of strictly adhering to such statutory requirements. *See Moore v. Carlson*, 112 Minn. 433, 434, 128 N.W. 578, 579 (1910) (noting, with regard to sufficiency of notice, that "[f]oreclosure by advertisement is purely a statutory creation" and thus "[o]ne who avails himself of its provisions must show an exact and literal compliance with its terms"). Furthermore, *Goldsworthy* is an actual-notice case. 268 N.W.2d at 49 ("The signing of the receipt . . . raised a presumption that petitioner received actual notice of the state's intent to revoke his license."). *Goldworthy* involves the exception, not the normal rule. *Thiele*, 425 N.W.2d at 584.

*O'Sell v. Peterson* is also a case in which the defendant received actual notice of the summons, 595 N.W.2d at 871, and so cannot provide the starting point for our analysis. *O'Sell*, however, is useful in that it explains why receipt of actual notice justifies an exception to the normal strict-compliance rule: "evidence that the service actually reached the intended person strongly supports a conclusion that service is valid *because due process has been afforded*." *Id.* at 873 (emphasis added). The guarantee that property will not be taken from someone without due process is a bedrock constitutional guarantee. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S.

5

123, 168, 71 S. Ct. 624, 647 (1951) (Frankfurter, J., concurring) (describing procedural due process as "a principle basic to our society" which has existed over "the course of centuries" and provides "essential safeguards"). The two elements of due process are notice and a meaningful opportunity to be heard before any taking occurs. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). It is reasonable to conclude that if one has received actual notice, an otherwise strict compliance requirement may be relaxed because of the increased likelihood that due process has been satisfied.

Here, the jury found that Jaeger did not receive actual notice; therefore, the normal strict-compliance rule applies. *See Drews v. Fed. Nat'l Mortg. Ass'n*, 850 N.W.2d 738, 741-42 (Minn. App. 2014). "Strict compliance requires a foreclosing party to demonstrate exact compliance with a statute's requirements." *Id.* (quotation omitted); *see Thiele*, 425 N.W.2d at 584 (stating that in the absence of any applicable exception, rule 4 is "taken literally").

Although Palladium asserts that whether actual notice was received is "wholly irrelevant" to the determination of whether someone is "then residing therein," caselaw shows that actual notice is the determinative factor regarding whether rule 4 requires strict or substantial compliance. *See, e.g.*, *Koski v. Johnson*, 837 N.W.2d 739, 743 (Minn. App. 2013) ("When a party substantially complies with [rule] 4, actual notice of the summons will subject a defendant to the jurisdiction of the court.") (quotation omitted), *review denied* (Minn. Dec. 17, 2013); *Van Note v. 2007 Pontiac*, 787 N.W.2d 214, 219 (Minn. App. 2010) ("[I]n substitute-service cases, substantial compliance with rule 4 is sufficient to effect service of process whe[n] the intended recipient has actual

notice."); *Larson v. Hendrickson*, 394 N.W.2d 524, 526 (Minn. App. 1986) ("When actual notice of the action has been received by the intended recipient, the rules governing such service should be liberally construed.") (quotation omitted). But "[i]f a defendant has no actual knowledge of an action, the service methods authorized by Rule 4 are to be strictly followed."[1] 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 4:6.

*State v. Briard* provides an example of strict versus liberal interpretation of a service rule. 784 N.W.2d 421, 430-31 (Minn. App. 2010). In *Briard*, the district court had concluded that service of a subpoena upon a defendant in a criminal matter was effective, based upon the reasoning in *O'Sell*. *Id.* at 425, 430. This court disagreed, stating that reliance on *O'Sell* was inappropriate because, as a rule based upon a criminal statute, the service rule must be strictly construed. *Id.* at 430. Eschewing *O'Sell*'s more liberal "sufficient nexus" and "reasonable assurance" tests for sufficiency of notice, this court instead relied upon "the plain language" of the service rule. *Id.* That rule prescribed that "substitute service [must be] made upon a person who *resides* in the same

---

[1] The dissent contends that "[w]hether the addressee has actual notice is neither necessary to nor dispositive of the effectiveness of substitute service." The dissent offers no explanation as to why the cases we cite, which involve substitute service, all consider actual notice. The dissent does not mention *Thiele*, which specifically described actual notice as an "exception" to the normal rules regarding service. 425 N.W.2d at 584. Even *O'Sell* stated that "evidence that the service actually reached the intended person strongly supports a conclusion that service is valid." 595 N.W.2d at 873. In contrast, the dissent offers no citation in support of its assertion, nor any discussion of how Jaeger's lack of actual notice affects this case (or, if it does not, why that is so).

7

abode as the intended party." *Id.* We concluded that service was ineffective because "the record clearly reflect[ed] that [the defendant's son] did not reside with his parents."[2] *Id.*

Here, we too are guided by the plain language of the rule and the straightforward definition of "resides." A person residing at a particular place is a "resident." Black's Law Dictionary defines "resident" as "[a] person who lives in a particular place." 1424 (9th ed. 2009). "Residence" is "1. The act or fact of living in a given place for some time. . . . 2. The place where one actually lives . . . [and] just means bodily presence as an inhabitant in a given place." *Id.* at 1423. The record supports the district court's finding that J.C. lived at a separate location. According to a strict and literal interpretation of plain language, substitute service could not have been made upon J.C. because he did not live at the property.[3] J.C.'s role as a periodic caretaker is insufficient to make him a resident.

---

[2] The dissent disregards the district court's finding of fact that J.C. did not live at the property, instead making its own findings by crediting the testimony of the process server that "J.C. said he lived at the address." J.C.'s testimony stands opposed to the process server's, but the dissent has chosen its preferred witness. In creating its own operative facts, the dissent is able to distance this case from *Briard* while also sidestepping any strict consideration of the "then residing therein" language of the service rule, because, on the dissent's findings of fact, J.C. admitted that he resided there. In other words, the dissent bases its reasoning on J.C.'s supposed adoptive admission, rather than on the facts as found by the district court.

[3] The dissent, by necessity, moves well beyond the plain language of the rule. *O'Sell*'s tests of reasonable assurance and sufficient nexus were based on such extratextual considerations as "a relationship of confidence," whether the person upon whom substitute service was made was "trusted," and "intent to return" to a location. 595 N.W.2d at 872-73. This is not strict and literal interpretation, as our caselaw indicates is required when no actual notice was received. Rather, it is broad, permissive, liberal interpretation.

Palladium also asserts that a determination of whether someone is "then residing therein" should come before consideration of whether actual notice was received by the defendant (and thus before consideration of whether the service rule requires strict or liberal compliance).  Palladium provides no legal support for this contention,[4] but more importantly, Palladium's method of analysis cannot be squared with *Briard*.  *Briard* declined to engage in an *O'Sell*-based interpretation of "residing" because it noted that interpretation must be strict.  784 N.W.2d at 430.  The antecedent consideration is whether the language must be interpreted strictly or may be interpreted broadly, which is based upon whether actual notice was received.  One need only look to comments on the rule to confirm as much: "*If* a defendant has no actual knowledge of an action, [*then*] the service methods authorized by Rule 4 are to be strictly followed."  1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 4:6 (emphasis added).

If Palladium's argument is accepted, the term "then residing therein" encompasses no more persons under substantial compliance than it does under strict compliance.  It is difficult to discern what the difference between strict and substantial compliance with rule 4 would be under Palladium's theory of the law.[5]  But when a party has not received actual notice of a foreclosure sale, strict compliance with rule 4 is required.  Under a strict and literal interpretation of the applicable service rule, J.C. did not live at the property when substitute service upon him was attempted.  Because he was not "then

---

[4] The closest Palladium comes to providing legal support for its claim is an unpublished opinion from New Jersey, but the reasoning of the opinion is based upon *O'Sell*, which we have already discussed.

[5] This observation also applies to the dissent.  We consider the difference between strict and substantial compliance with rule 4, as did the district court.  The dissent does not.

residing therein," the district court properly concluded that the attempted service was ineffective.[6]

***Standard of proof***

Palladium also argues that the district court committed reversible error by employing the wrong standard of proof in determining that service was improper.

As a threshold matter, it is not clear that this argument may be considered on appeal at all. Palladium did not raise any objection based on improper burden of proof at trial, and made no such assertion in a motion for a new trial. A reviewing court generally considers only issues presented to and decided by the district court. *Thiele*, 425 N.W.2d at 582.

Palladium's argument is confusing because it explicitly states that it is not challenging the jury instructions, which was the only point at which a burden of proof was articulated. Palladium asserts that the error is the district court's "improper legal determinations" based upon the factual findings. But burdens of proof apply to findings of fact, not legal conclusions. *See Black's Law Dictionary* 223 (9th ed. 2009) ("[B]urden of proof denotes the duty of establishing . . . the truth of the operative facts upon which

---

[6] The dissent raises *sua sponte* an issue not raised or argued by either party: that J.C. was in possession of the property under Minn. Stat. § 580.03, and thus service was effective. The dissent's interpretation of section 580.03 reads language out of the statute. In the dissent's view, the statute could simply read "notice shall be served . . . upon the person in possession of the mortgaged premises," leaving out the language "in like manner as a summons in a civil action in the district court." Also, our cases highlight the difference between actual and constructive possession of real property, *see Koecher v. Koecher*, 374 N.W.2d 542, 546 (Minn. App. 1985), *review denied* (Minn. Nov. 26, 1985), and a determination of whether the language of section 580.03 encompasses one or both, and whether that alone suffices for effective service, is properly left for a case in which the issue is squarely raised and argued.

10

the issue at hand is made to turn by substantive law."). Palladium cites several cases that all use burdens of proof in the context of establishing facts. If Palladium's argument is based (as it claims) upon the district court's legal conclusions, then it is incorrect, because burdens of proof apply to findings of fact.

**Affirmed.**

**CONNOLLY,** Judge (dissenting)

I respectfully dissent and would reverse the decision of the district court. "Whether service of process was effective . . . is a question of law that [this court] reviews de novo." *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008).

The district court concluded that service on Jaeger was not effective because J.C., Jaeger's adult son, was not a resident of Jaeger's abode within the meaning of Minn. R. Civ. P. 4.03(a) (providing for substitute service of process by leaving a document at the person's "usual place of abode with some person of suitable age and discretion then residing therein"). But service of notice of a foreclosure sale is also governed by Minn. Stat. § 580.03 (2014) (providing that "a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied"). In my view, J.C. was both residing in the premises as required by the rule and in possession of the premises as required by the statute.

For an individual to be "then residing therein" for purposes of service of process, there must be a sufficient nexus between the person to whom the document is addressed and the individual with whom it is left to establish some reasonable assurance that notice left with that individual will reach the addressee. *O'Sell v. Peterson*, 595 N.W.2d 870, 872 (Minn. App. 1999).

> For example, a relationship of confidence, including but not
> limited to a familial relationship, may establish a nexus and
> support the conclusion that notice would reach the defendant.
> In addition, the duration of an individual's presence, the

D-1

> frequency of the presence, or the intent to return may also establish nexus between the individual and defendant.

*Id.* at 872-73 (citations omitted). *O'Sell* concluded that service was effective when a summons and complaint were given to the addressee's 14-year-old stepson who was staying at the addressee's home on a six-day noncustodial visit. He stayed there every other weekend, and his visits lasted up to two weeks. During visits, he regarded himself as living at the addressee's home, and he had day-to-day contact with the addressee.

Here, J.C. testified that he had independent access to the property, that he made 20 to 30 visits to the property every year, and that he reported regularly to Jaeger about his visits. The process server testified that, unless J.C. said he lived at the property, the notice would not have been left with him. When asked, "If the individual [who answers the door] indicates that they do not live there, do you hand them a copy of whatever it is you brought to serve?", the process server's answer was an unequivocal "I do not." There was "reasonable assurance" that the notice handed to J.C. at the property would reach Jaeger. *See id.* at 872.

The district court relied on *State v. Briard*, 784 N.W.2d 421 (Minn. App. 2010) (construing Minn. R. Crim. P. 22.03, which provides for substitute service of a subpoena "by leaving a copy at the person's usual place of abode with a person of suitable age and discretion who resides there").[7] But *Briard* is distinguishable. It concerned service of a subpoena on a woman to appear at her husband's criminal trial. *Id.* at 423. An attempt was made to serve the subpoena on their adult son, who was then at their home but

---

[7] As the author of *Briard*, I am somewhat familiar with the case.

resided with his wife at a different address. *Id.* The son refused to accept service, and the subpoena was left in the back of his truck that was parked at the parents' home. *Id.*

Service was not effective because "[the woman's] son did not reside within [his mother's] abode." *Id.* at 431. "The record clearly reflects that [the son] did not reside with his parents. . . . As [the son's] wife testified, she and her husband have lived at [their own address] with their children for the past 16 years." *Id.* at 430. The process server "testified that prior to leaving the subpoena with [the son], he contacted the post office to determine that [the parents' address] was the [wife's] permanent address, and also learned that [the son] has a residence 'down the road.'" *Id.* at 424. Finally, the son refused the document and it was left in the back of a truck. *Id.* at 423.

Unlike *Briard*, the process server testified that J.C. said he lived at the address and had been handed the notice, the mailbox bore a label indicating that mail could be delivered to J.C. at that address, J.C. was at the address 20 to 30 times a year to secure and maintain it, and, most significantly, J.C. reported to Jaeger on what he had seen or found at the address after each visit. Most importantly, the jury answered "No" when it was asked: "Did Tim Johnson, of OnTime Delivery Service, fail to deliver the Notice of Association Lien Foreclosure Sale to James Charles ("J.C.") Jaeger on or about May 12, 2011?" Consequently, in this case I believe there was a reasonable assurance that the foreclosure notice that the process server left with the son would reach the father.

The jury found, though, that the document did not reach Jaeger, and the district court concluded that, because of this finding, it was obliged to strictly construe the

"residing therein" language in Minn. R. Civ. P. 4.03(a).[8] But Minn. R. Civ. P. 4.03(a) makes substitute service effective based on the act of the process server, i.e., leaving a document at a particular place with a resident of that place who is of suitable age and discretion: the effectiveness of substitute service is not, and cannot be, based on what the resident chooses to do with the document. Whether the addressee has actual notice is neither necessary to nor dispositive of the effectiveness of substitute service.

Moreover, J.C. was "the person in possession of the mortgaged premises" under Minn. Stat. § 580.03 and in control of the premises when the process server gave him the copy of the notice. *See State v. Spence*, 768 N.W.2d 104, 108, 110 n.5 (Minn. 2009) (holding, in the context of the burglary statute, that "the plain meaning of possession [of a building] . . . is to exercise control over the building" and noting that liability for burglary is contingent on "occupancy or possession of property at the time the offense was committed").

Therefore, I conclude that: (1) based on the undisputed facts, J.C. was both "the person in possession of the mortgaged premises" within the meaning of Minn. Stat. § 580.03 and "then residing therein" within the meaning of Minn. R. Civ. P. 4.03(a); and

---

[8] The district court relied on *Lundgren v. Green*, 592 N.W.2d 888 (Minn. App. 1999), *review denied* (Minn. July 28, 1999) for this proposition, but *Lundgren* is a very different case. *Lundgren* concerned service of a summons and complaint on the plaintiff's estranged wife at her residence after the plaintiff had moved out, purchased a new home, and moved himself and his personal property into that home. *Id.* at 890. Although he learned of the summons and complaint from an insurer, he alleged insufficient service of process because his estranged wife's address was not his "usual place of abode." *Id.* The district court agreed and concluded that the plaintiff's actual notice was irrelevant to the ineffectiveness of service. *Id.* at 892. The case does not address the "residing therein" language at issue here.

(2) there was a sufficient nexus between J.C. and Jaeger to establish a reasonable assurance that Jaeger would receive the notice left at his premises with J.C.  I would reverse the decision that service was ineffective.