ANDERSON, Justice (dissenting).
Because I do not believe that Rule 3.01(c) has a special meaning that requires personal delivery, I respectfully dissent from the court's opinion. I would hold that *548 the meanings of "deliver" and "delivery" in Rule 3.01(c), as it currently is written, include facsimile transmission. Put another way, the actions of Cox in delivering the summons and complaint to the sheriff, in a manner that ensured that the sheriff received the documents, were consistent with the requirements of the rule.
The court's opinion creates a clear rule, which is helpful and needed. But because Cox is certainly not the only practitioner to have read Rule 3.01(c) and logically concluded that "delivery" did not preclude faxing-or even mailing-the summons and complaint to the sheriff, I believe that the court's rule is misguided.
First, I take issue with the conclusion that "delivery" has a special legal meaning. It is true that some of the dictionary definitions that the court cites suggest that "delivery" involves a personal handoff. But "the formal act of voluntarily transferring something," Delivery , Black's Law Dictionary (10th ed. 2014), does not necessitate the sender to physically hand the document to the recipient.[1] Moreover, the definition of "delivery" in Black's Law Dictionary is followed by specific forms of delivery, including "absolute delivery," "actual delivery," and "constructive delivery," which shows that, in its basic form, "delivery" is simply a transfer. Id. at 521-22.[2] The forms of delivery that require a personal handoff require a modifier like "actual" or "absolute." The rules use "delivery" in a broader sense, which allows for more than just "hand delivery"; certainly there is no language in the rule excluding a broader interpretation than the narrow view adopted by the court.
My next concern is with the court's reliance on three cases to conclude that " 'delivery' has a well-established special meaning requiring a physical hand-off." See Bellows v. Ericson , 233 Minn. 320, 46 N.W.2d 654, 656 (1951) ; Thompson Yards, Inc. v. Standard Home Bldg. Co. , 161 Minn. 143, 201 N.W. 300, 301 (1924) ; Bond v. Penn. R.R. Co. , 124 Minn. 195, 144 N.W. 942, 944 (1914). The three cases cited by the court do little more than state in a conclusory fashion whether a summons was or was not placed in the hands of the sheriff. They hardly show that this meaning was well established or that personal delivery to the sheriff was required.
To be sure, these three cases state that "delivery" includes "placing into the hands of the sheriff," but the decisions do not establish that a special meaning that precludes any other form of delivery necessarily exists. For example, we held in Bond that "[t]he action is commenced ... when [the summons] is placed in hands [sic] of the proper officer for such service, if this be followed by actual or constructive service *549 within the prescribed time." 144 N.W. at 944. But the question in Bond was whether an action was commenced when the summons was delivered to the sheriff where the action took place and then constructively served upon the out-of-state defendant or whether the action commenced when the out-of-state defendant was personally served with the summons and complaint. Id. at 943. The opinion simply states the undisputed fact that the summons and complaint were in the hands of the sheriff and then holds that an action may commence when personal service occurs.[3]
Similarly, the other two cases do not necessarily require that delivery in Rule 3.02(c) must be personal. In Bellows , we said that "[t]he original action ... was commenced on March 13, 1950, by placing the summons and complaint in the hands of the Hennepin county sheriff for service on defendant." 46 N.W.2d at 656. But this statement does not suggest that "into the hands" was the only acceptable way to deliver to the sheriff at that time. Instead it is a statement of what actually happened and that it was sufficient to initiate the action. In Thompson Yards , although we noted that "[t]he original summons, placed in the hands of the sheriff of Hennepin county ... was without defect," this statement again does not reflect a conclusive view on our part that a personal handoff is the only way to deliver to the sheriff without defect. 201 N.W. at 301. In sum, I believe that, at most, these decisions suggest that "delivery" includes "placing into the hands" of the sheriff but does not limit other forms of delivery.[4]
The court emphasizes the need to be consistent with adjacent procedural rules when interpreting the word "delivery." I agree, but I note that Rule 3.01(c) is unique; parts (a) and (b) of Rule 3.01 are quite different from part (c). In contrast to the single step-serving the summons upon the defendant-required to commence an action under Rule 3.01(a), Rule 3.01(c) describes a two-step process for commencing an action. See *550 Minn. R. Civ. P. 3.01(a), (c). The first step is to "deliver" to the sheriff and the second is for the sheriff to serve the defendant. Id . These two steps of the rule describe two different actions, which establishes that "delivery" is not the same as "service." On the other hand, Rule 3.01(b), which allows the defendant to consent to other forms of service, does not speak to "delivery." Minn. R. Civ. P. 3.01(b). Therefore, Rule 3.01(b) limits only the modes of service , not the method of delivering the summons and complaint to the sheriff. Similarly, the interpretations of "delivery" in the federal rules are not persuasive in this dispute because the term "delivery" in Rule 4 of the federal rules occurs when discussing service of process. See, e.g. , Fed. R. Civ. P. 4(e)(2)(A) (stating that "an individual ... may be served in a judicial district of the United States by ... delivering a copy of the summons and of the complaint to the individual personally").
Finally, the drafters of our civil procedure rules know how to indicate when delivery requires a physical handoff. As we have said, " Rule 4.03(a) provides that personal service can be accomplished 'by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein.' " Kmart Corp. v. County of Clay , 711 N.W.2d 485, 489 (Minn. 2006) (emphasis added) (quoting Minn. R. Civ. P. 4.03(a) ). We have interpreted this rule to exclude facsimile transmission. Id. at 490 (" Rule 4... does not include any provision for service by facsimile."). "Delivery" can be easily limited to personal delivery, but the drafters chose not to do so in Rule 3.01(c).[5]
In sum, I conclude that "delivery" of a summons and complaint by facsimile transmission to a sheriff for subsequent personal service was proper and permitted under Rule 3.01(c). More generally, I view the court's opinion to be an unnecessarily restrictive interpretation of our rule, and for no apparent reason. If another outcome is desired, either because of a parade of horribles that the court foresees, or for some other reason, then the appropriate action is to amend the rule.
I respectfully dissent.

The court relies on definitions of "delivery" in Black's Law Dictionary because it concludes that "delivery" has an accepted legal meaning requiring personal delivery. Nontechnical dictionary definitions also do not definitely answer whether "delivery" requires a personal handoff. The Webster's Third New International Dictionary 597 (3d ed. 2002) defines "deliver" as "give, transfer: yield possession or control of: make or hand over." The American Heritage Dictionary 480 (5th ed. 2011) defines "deliver" as "[t]o bring or transport to the proper place or recipient; distribute" and "delivery" as "[t]he act of conveying or delivering," "[s]omething delivered, as a shipment or package," and "the act of transferring to another."

According to Black's Law Dictionary , "absolute delivery" is defined as "[a] delivery that is complete upon the actual transfer of the instrument from the grantor's possession," "actual delivery" is defined as "[t]he act of giving real and immediate possession to the buyer or the buyer's agent," and "constructive delivery" is defined as "[a]n act that amounts to a transfer of title by operation of law when actual transfer is impractical or impossible." Black's Law Dictionary 521-22 (10th ed. 2014).

The court makes the interesting, and no doubt little-known, point that fax machines have a very long history. While it is true that the fax machine predates Bond by 70 years, it is anachronistic to say the court in Bond would be familiar with the modern fax machine. As a practical matter, no evidence exists of widespread use of facsimile technology among lawyers until long after all three of the decisions the court cites. See Jonathan Coopersmith, Faxed: The Rise and Fall of the Fax Machine 174 (2015). As the court notes, the early users of fax machines were indeed newspapers, but "[t]he number of fax machines actually was quite small-less than a hundred in 1933." Id . at 38. Faxing documents was still a challenge in the 1930s, when "message fax faced a great problem in gaining business acceptance: creating legible copies from faxed images, essential for normal information flow in offices. That problem remained unsolved until the Xerox photocopier in the 1960s." Id. at 68. It was not until the 1950s that the technology emerged that would allow "businesses to send whatever they wanted on a full-sized sheet of paper, such as invoices and signed letters on company letterhead." Id . at 97. Nonetheless, in that era some "still considered facsimile commercially unrealistic because of its costs and the firmly entrenched teletype[, a personal telegraph system.]" Id . at 81. According to one estimate, in 1956 "75 percent of regular lines were inadequate even for local faxing." Id . at 80. It was not until the 1980s and 1990s that the fax machine's use became widespread and infiltrated the legal community as a whole. A survey of rural lawyers in 1990 found that "[n]inety percent had fax machines with two-thirds acquiring their machines only in 1989-90." Id . at 174.

Indeed, because how the documents in Bellows , Bond , or Thompson Yards were delivered to the sheriff was not an issue, we do not know that the court, in any opinion, was using "in the hands" as synonymous with "personal delivery." That is not an unreasonable assumption, but it is entirely an assumption.

The court is correct that I read "personally" in Rule 4.03(a) to modify "delivering" and not "individual." This interpretation is the only one that is grammatically possible. "Personally" is an adverb, "by delivering" is a verb (present participle), and "individual" is a noun. Adverbs modify adjectives, verbs, and other adverbs. See The Chicago Manual of Style ¶ 5.143 (15th ed. 2003). Adverbs cannot modify nouns. Id . ¶ 5.146. The grammatical structure of the word "personally" supports my point that the most logical interpretation of Rule 3.01(c) is that "delivery" can include delivery by facsimile.